In re CONVERGENT TECHNOLOGIES SECOND HALF 1984 SECURITIES LITIGATION.

This Document Relates To: All Actions.

No. C 85 20130 SW/WDB.

United States District Court,
N.D. California,
San Jose Division.

Oct. 28, 1988.

Josef D. Cooper, Douglas Marshall, Law Offices of Josef D. Cooper, San Francisco, Cal., Robert N. Kaplan, Robert A. Skirnick, Mark W. Gaffney, Frederic S. Fox, Kaplan, Kilsheimer & Foley, New York City, Jules Brody, Stull Stull & Brody, New York City, for plaintiffs.

Pettit & Martin, Michael F. Perlis, Philip F. Atkins-Pattenson, Daniel T. Bernhard, Tayyab Mahmud, San Francisco, Cal., for defendants Convergent Technologies, Inc.,

Merrill E. Newman, Allen H. Michels, E. Joseph Willits and Elliott L. Wegbreit.

Douglas M. Schwab, Michael J. Coffino, Kevin R. Johnson, Celia M. Jackson, Michael L. Charlson, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants Thomas J. Cable, A Robert Towbin and William D. Rollnick.

## MEMORANDUM OF DECISION

WAYNE D. BRAZIL, United States Magistrate.

In this opinion the court addresses four principal issues: (1) does the fact that a statement taken from a non-party witness is purely factual, or is in the form of a verbatim transcription of her words, disqualify that statement from protection under the work product doctrine? (2) should the court quash a subpoena by which defendants attempt to secure a copy of an adopted statement directly from the non-party who gave the statement to plaintiffs' counsel? (3) by asking certain non-party witnesses to review, correct and adopt their statements, did plaintiffs' counsel waive whatever work product protection otherwise would have attached to such statements? (4) should the court prohibit defendants, at this juncture in the pretrial period, from reviewing, acquiring, or using copies of adopted non-party statements even though the non-parties who gave those statements to plaintiffs' counsel are willing to share copies of the statements with defendants? Of these four issues, the second and third are of first impression. The fourth has been addressed by only one other court, with whose conclusion this opinion disagrees.

## PROCEDURAL HISTORY

Several years after the events that gave rise to this suit, counsel for plaintiffs privately interviewed at least two former employees of the defendant corporation. These employees, Conrad Sosnow and Michael Dunmire, are not parties to this action but held consequential positions within the defendant corporation and have access to information that could prove significant in the disposition of this matter. Plaintiffs' counsel took notes during the interviews of these two former employees, then showed the employees the notes and asked them to correct any errors that might be in the notes. Mr. Dunmire signed his statement. Mr. Sosnow was not asked to sign his. As a result of evidence proffered and adduced earlier in this matter, the court concluded that Mr. Sosnow and Mr. Dunmire had "adopted" the statements in question, thus bringing them within the ambit of the second paragraph of Federal Rule of Civil Procedure 26(b)(3).

Sometime after learning that plaintiffs' counsel had interviewed and acquired statements from these non-parties, defense counsel began seeking ways to discover the statements. Earlier this year, defense counsel filed a motion in this court asking that plaintiffs' counsel be compelled to identify every former employee of the defendant corporation who had been interviewed by plaintiffs' counsel and to produce every statement taken from such former employees. In response to that motion, this court held that the witness statements were classic work product, that the mere showing of the statements to the witnesses for the purpose of correcting errors in them did not constitute a waiver of the protection the statements would otherwise enjoy under the work product doctrine, and that defendants had failed to make the kind of showing required to penetrate the work product protection.[1]

In support of their assertion that plaintiffs' counsel had waived work product protection, defense counsel argued that when plaintiffs' counsel asked the non-party witnesses to adopt the statements, they (plaintiffs' counsel) substantially increased the likelihood that defense counsel would gain access to the statements. Defense counsel reasoned that once a non-party adopted a statement, that non-party was entitled, under Rule 26(b)(3), to a copy of that statement on demand, with no showing of good cause, and that since the non-party was entitled to his statement, the statement

---

1. *See* this court's Order re Discovery, filed June 24, 1988.

was in his constructive possession, with the result that if defense counsel subpoenaed the statement from the non-party, that non-party would be compelled to demand it from plaintiffs' counsel and then to turn it over to defense counsel. Since a reasonable attorney should have foreseen this scenario, defense counsel argued, it follows that when plaintiffs' counsel asked the non-party witnesses to adopt their statements, plaintiffs' counsel were voluntarily setting in motion a chain of events that substantially increased the likelihood that defense counsel would acquire the statements through the subpoena power, and that in so doing plaintiffs' counsel waived the work product protection these statements might otherwise enjoy.

The persuasiveness of this line of reasoning depends, in part, on the assumption that a court would order the non-party to demand from plaintiffs' counsel, then produce in response to a subpoena from defense counsel, the non-party's adopted statement. When this argument was first presented, the court was not prepared to make a judgment about the likelihood that the subpoena power could be so used, as against an assertion of work product by plaintiffs' counsel. So the court invited defense counsel to attempt to subpoena Mr. Dunmire's statement from him. Because Mr. Dunmire is not a party to this action, and because he resides in the state of Washington, defense counsel sought to subpoena Mr. Dunmire's statement through the district court in Washington. When plaintiffs' counsel sought an order quashing the subpoena, the court in Washington referred the issues raised by the subpoena back to this court, perceiving their relation to the issues first raised by defendants' original motion to compel.

## MAY PURELY FACTUAL WITNESS STATEMENTS RECEIVE PROTECTION UNDER THE WORK PRODUCT DOCTRINE?

■ Defense counsel have asserted that "[t]o the extent that these witness statements contain *only* facts, or are verbatim witness accounts, they are discoverable because they do not even come within the scope of work product protection." (emphasis in original) Note 3, Defendants' Supplemental Memorandum of Points and Authorities Re: Defendants' Motion to Compel Further Answers to Interrogatories and Compliance with Subpoena Duces Tecum, received October 12, 1988. In support of this unorthodox proposition, defendants offer the following purported citation: "See, e.g., *Mervin v. Federal Trade Commission*, 591 F.2d 821, 825 (D.D.C.1978)." The *Mervin* opinion lends support to defendants' position here only if it is read superficially. The portion of the *Mervin* opinion on which defendants' apparently rely reads as follows: "For example, a government attorney may not protect a verbatim witness statement from disclosure (either under the FOIA or in civil discovery) merely by including its text in a memorandum prepared for use in litigation." 591 F.2d at 825.

There are two problems with this statement. The first is that while it is accurate as far as it goes, it does not go very far with respect to civil litigation outside FOIA. That is so because, as subsequent sections of this opinion make clear, under *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), a statement a lawyer or an investigator takes from a witness is classic work product and is presumptively protected against disclosure, whether it is included in a separate memorandum written by counsel or not.

The second problem with defendants' reliance on this passage begins with the fact that the *Mervin* court was interpreting the Freedom of Information Act. Federal courts are required by Congress to interpret that Act liberally in favor of disclosure because disclosure is the Act's principal purpose. Most important, the principal case cited by the *Mervin* court to support the passage quoted above does not stand for the proposition defendants assert here. That case, *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724 (5th Cir.1977), held that because of the special policies favoring disclosure that underlie the FOIA, Congress could *not* have intended to "incorporate *Hickman* in all its complexity into

exemption 5 as a sort of direct legal transplant...." 563 F.2d at 734. Indeed, the *Robbins* court noted that if *Hickman* applied in the FOIA context the same way it applied in civil litigation generally, the material sought in *Robbins* would be exempt from disclosure because *"Hickman* protected even relevant non-privileged witness statements unless production 'is essential to the preparation of one's case.'" *Id.* Having thus noted that the outcome would be different in civil litigation outside the FOIA context, the *Robbins* court went on to order disclosure of the witness statements being sought in that case. Since the *Mervin* opinion relies on *Robbins,* and since *Robbins* supports an interpretation of the work product doctrine that squarely contradicts the position urged by defendants here, this court is not moved by the citation to *Mervin.*

More fundamentally, the court is disturbed that defense counsel could purport to seriously argue that witness statements fall outside the work product doctrine when they contain only facts. Presumably most witness statements consist largely or exclusively of facts. A witness' non-factual assertions or speculations are of little value as evidence, and any opinions or theories of an attorney that happened to work their way into a witness' statement would receive even greater protection from discovery than the witness statement itself. Thus it is fair to assume that in the normal course, when a lawyer tries to use discovery to acquire witness statements from another lawyer, the discovering lawyer is motivated primarily by a desire to learn the version of the facts that is set forth in the statement.

This set of observations becomes especially important in light of *Hickman v. Taylor,* because there is no reason to believe that the witness statements at issue in that seminal case were anything but factual. There simply is no authority, outside the FOIA arena, for the proposition that work product protection does not apply to witness statements that are purely factual. Nor is this lack of authority surprising. For a rule that purported to protect only the non-factual portions of witness statements, or that offered no protection to purely factual witness statements, would simultaneously eviscerate *Hickman* and create a nightmare for courts and counsel. Such a rule would seriously discourage counsel from doing the investigative homework that *Hickman* sought to encourage. It would either discourage lawyers from taking factual statements from witnesses or encourage lawyers to make sure that witness statements were interlaced with non-factual matter, either opinions and speculations by the witness or theories by the attorney. A rule that pressured lawyers in either of these directions would fundamentally disserve the truth finding process. Moreover, under the rule defendants propose courts would constantly be asked to review witness statements *in camera* to determine whether they were purely factual or to segregate the factual components of statements from their non-factual components. All of this would make the work product doctrine a considerably greater source of difficulty for the bar and for the judiciary than it already is. For all of the reasons just summarized, the court emphatically rejects defendants' assertion that "witness statements [that] contain *only* facts, or are verbatim witness accounts ... do not even come within the scope of work product protection."

It must be emphasized that the law does not permit counsel or litigants to use the work product doctrine to hide the facts themselves. Defense counsel can learn those facts by deposing the witnesses, by acquiring unprivileged documents related to this case from the witnesses, and by posing interrogatories to plaintiffs' counsel that would compel disclosure of the substance of relevant information plaintiffs' counsel has learned from non-party witnesses. The issue here presented is not whether defense counsel have a right to learn the relevant factual information, but whether they have a right to that information in a particular form, namely, a piece of paper prepared by plaintiffs' counsel and signed by a non-party witness.

## THE MOTION TO QUASH
## THE SUBPOENA

In support of their subpoena, defendants offer two principal arguments: (1) since

Rule 26(b)(3) entitles Mr. Dunmire to a copy of his statement on demand, that statement is within his constructive possession and thus must be acquired and produced by him in response to the subpoena, and (2) that enforcing defendants' right to subpoena this document from Mr. Dunmire need cause no harm to the interests protected by the work product doctrine because a good lawyer can protect her work product simply by not asking non-party witnesses to adopt statements she takes from them.

Plaintiffs argue, in response, that if the court were to permit defendants to use the subpoena power to force Mr. Dunmire to acquire, then produce, a copy of his statement, in effect the court would be permitting defendants to do an end run around the work product doctrine with respect to the very kinds of documents that originally inspired the Supreme Court, in the *Hickman* opinion, to announce this important body of law.

■ The court need spend little time on defendants' first argument. The court is persuaded, and hereby holds, that, for purposes of Rule 45, a non-party witness has constructive possession of any adopted statement he has given to any party (or representative of any party) and that, *absent some weightier competing interest,* a litigant could use the subpoena power to compel such a non-party witness first to acquire a copy of his statement from the party or lawyer who took it and then to produce the statement in response to the subpoena.

Defendants' second argument raises much more difficult questions. Would permitting defense counsel to acquire the non-party statement through the subpoena power harm interests that the work product doctrine is designed to protect, or would those interests be protected sufficiently by ruling that if counsel want to protect their notes and memoranda from witness interviews, they should take care not to permit the witness to review them? In attempting to respond to these questions the court will consider: (1) the place of non-party witness statements in the history

of work-product doctrine; (2) the deliberations of the Advisory Committee that drafted Rule 26(b)(3) and the purpose of the provision of that rule that entitles non-party witnesses to copies of their adopted statements, and (3) the likely effect of the ruling defendants seek on trial preparation and the truth finding process.

Non-party witness statements have played the central role in the history of work product doctrine. As noted above, the materials that were in issue in *Hickman v. Taylor,* the Supreme Court opinion upon which all modern federal work product doctrine builds, consisted largely of statements taken by a lawyer from important, percipient non-party witnesses. Some of those statements had not been subscribed by the witnesses, but others had been signed, and thus would be deemed "adopted" within the meaning of that phrase in the current version of Rule 26(b)(3). The *Hickman* court unequivocally announced that work product protection extended to *both* adopted and unadopted statements. While noting that private notes or memoranda that reflected lawyers' impressions or legal theories should be protected by an even more demanding standard, the Court clearly held that adopted witness statements were not discoverable as a matter of right and that access to them through the discovery process would require a showing either of "necessity" or that denial of access would "unduly prejudice the preparation of petitioner's case or cause him ... hardship or injustice." (329 U.S. at 509, 67 S.Ct. at 392).

Among the reasons that inspired this holding, perhaps the most important was the Court's desire to protect the incentive system that the justices believed was so central to the vitality and the reliability of the adversary system. In short, the principal purpose of the work product doctrine was to encourage lawyers to aggressively investigate the facts related to their case. The *Hickman* court obviously believed that severe damage would be done to that incentive system, and thus to the truth finding process, if, without a showing of special justification, lawyers could discover from

their opponents copies of witness statements, be they adopted or not. In *Hickman,* as appears to be the case here, counsel had other means by which he could discover the factual information that was recorded in the witness statements that his opponent had secured. In *Hickman,* the only reasons offered to justify discovery of some of the statements were (1) to help the lawyer "prepare himself to examine witnesses and (2) to make sure that he has overlooked nothing." 329 U.S. at 513, 67 S.Ct. at 395. These interests were not sufficient, in the high court's view, to justify the harm that would be done to the adversary system if the statements were ordered disclosed. Thus the *Hickman* court refused to order disclosure even of adopted non-party statements.

If *Hickman* were the sole source of modern work product law (instead of its primary source), defendants' position in the matter before this court would be wholly untenable. However, Federal Rule of Civil Procedure 26(b)(3) became law some 23 years after *Hickman.* Because it is conceivable that that rule modified *Hickman* doctrine, we must determine whether defendants' arguments fare better under the version of Rule 26 that has been in effect since 1970.

■ Would it be consistent with Rule 26(b)(3) to permit defense counsel to use the subpoena power to acquire copies of statements given by non-parties? Defendants argue that the second paragraph of 26(b)(3) excepts adopted party and non-party statements from the normal operation of the work product doctrine and that acquiring copies of non-party statements through the subpoena power is consistent with the status afforded such statements by Rule 26. One implication of defendants' argument is that through the second paragraph of 26(b)(3) the Advisory Committee (and the Supreme Court) intended to create an equally broad exception to the work product doctrine for both statements by parties and statements by non-parties, and that under that equally broad exception

neither type of statement is entitled to any work product protection. For the reasons set forth in the paragraphs that follow, the court cannot agree.

At the outset it is important to point out that Rule 26(b)(3) does not, on its face, treat equally statements by parties and statements by non-parties. Under the terms of the rule, a *litigant* is entitled *only* to a statement the litigant himself made. The rule does not purport to entitle a litigant to a statement made by a non-party. Entitlement (*without a showing sufficient to penetrate work product protection*) to a statement made by a non-party is granted only to the non-party who made the statement. It is extremely unlikely that the drafters would have formulated the rule the way they did, with separate sentences creating different kinds of rights for persons in different statuses (parties versus non-parties) if, as defendants here would have the court believe, the drafters intended to create the same kind of right in a litigant to both types of statements. Professors Wright and Miller draw the same inference when they state that the provision in (b)(3) that entitles a non-party to a statement he has given "creates no right in a party to the litigation to obtain a copy of a statement of an ordinary witness without the usual showing required for work product." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2028 (1970).

The court finds additional support for the conclusion that the Advisory Committee did not intend to create equally broad exceptions for party statements and for non-party statements by examining the record of the deliberations that led the Committee to adopt these two different provisions. To try to understand the reasoning that supported the inclusion of the second paragraph of 26(b)(3) in the rule, the court has studied carefully the available minutes of meetings of the Advisory Committee between 1965 and 1970, the period during which the rules in issue here were drafted, debated and adopted.[2] The minutes show

---

**2.** It is not clear that a record of all of the Advisory Committee's deliberations has been

preserved, but the minutes that are available include substantial debates and several deci-

that the Committee adopted these two different provisions at quite different stages in their deliberations. The minutes also show that the competing interests the Committee sought to balance in these two provisions overlapped to some extent but were by no means identical. Finally, it is clear from the records that when the Committee adopted the two provisions in question it fixed different points of accommodation between the interests it was attempting to reconcile.

The Committee decided early in its deliberations that statements by a party should be excepted from work product protection.[3] In making this decision, one of the interests that the Committee weighed in the balance was the importance of preserving the incentive system about which the *Hickman* court had been so concerned.[4] As perceived by the Committee, the competing interests were in fairness to a litigant. The Advisory Committee's Note to the rule as adopted in 1970 articulates this concern as follows:

> Courts which treat a party's statement as though it were that of any witness overlook the fact that the party's statement is, without more, admissible in evidence. Ordinarily, a party gives a statement without insisting on a copy because he does not yet have a lawyer and does not understand the legal consequences of his actions. Thus, a statement is given at a time when he functions at a disadvantage. Discrepancies between his trial testimony and earlier statement may result from lapse of memory or ordinary inaccuracy; a written statement produced for the first time at trial may give

such discrepancies a prominence which they do not deserve. In appropriate cases the court may order a party to be deposed before his statement is produced.

Thus the Committee felt that when a party did not have a copy of his statement there was a substantial risk that his opponent could use it to unfairly hurt him at trial. In deciding that the risk of harm to this fairness interest outweighed the competing interests, the Committee apparently reasoned that entitling a party to his own statement was not likely to do serious harm to the incentive system that is so essential to effective pretrial preparation. While the minutes of the meetings to not detail the Committee's thought processes on this question, the Committee apparently felt that creating this right would not do much harm to an adversary's investigative impulse. The value and importance of a statement made by a party opponent is so obvious that it is unlikely that counsel or insurance companies would elect not to take such a statement merely because they would be required, upon demand, to share it with that opponent later in the pretrial period. Moreover, even before he acquires a copy of his statement a party opponent is likely to have a pretty good idea about what is in it, so forcing its disclosure to him is not likely to deprive opposing counsel of any huge advantage.

When the focus shifts from statements by parties to statements by non-parties, however, the balance of competing interests takes on a much different look. The record of the Committee's deliberations about how to handle non-party statements

sions (by majority vote) with respect to the rules at issue in this case. These valuable records are stored at the Washington National Records Center, which is located in Suitland, Maryland, but whose mailing address is Washington, D.C., 20409. The court wishes to express special gratitude to Ms. Ann R. Gardner, Staff Assistant to the Advisory Committee on Civil Rules, Administrative Office of the United States Courts, Washington, D.C., who expended considerable time and effort making these records available to this court.

**3.** *See* "EXCERPTS FROM THE TAPE OF THE MAY 1966 MEETING OF THE ADVISORY

COMMITTEE ON CIVIL RULES," at 16; see also "Rule 26, General Provisions Governing Discovery, Proposed Amendment [and] Advisory Committee's Note," at 26–5, and 26–27 to 26–28 (the version of Rule 26 and accompanying Note just cited appear to have been circulated for comment prior to the May, 1966 meeting of the Committee).

**4.** *See e.g.,* "Rule 26, General Provisions Governing Discovery, Proposed Amendment [and] Advisory Committee's Note," cited in preceding note, at 26–25 and 26–27 to 26–28.

reveals two important points. The first is that there were repeated, fully-aired and hotly contested debates about whether *litigants* should be entitled, without any showing of special justification, to discover from their opponents copies of statements by non-party witnesses.[5] As we discuss in subsequent paragraphs, those debates ended with an unequivocal rejection of this idea. The record also makes it clear, however, that there was much less thoughtful consideration given to the proposal that the non-parties themselves be given a right to their own statements. It was some four years after it had decided to entitle parties to their statements that the Committee decided to entitle non-parties to their statements. The deliberations about the latter proposal were almost perfunctory. The only reason offered in support of the proposal was that it would be unfair to deny a person who was going to testify at trial access to a statement he had given earlier.[6] The focus was on unfairness to the non-party who might be embarrassed while testifying, not on interests of parties. This provision simply was not intended to benefit litigants.[7]

In its Note to the provision entitling non-parties to copies of their own statements, the Committee rather disingenuously suggests that "Many, though not all, of the considerations supporting a party's right to obtain his statement apply also to the non-party witness." Advisory Committee Note accompanying the 1970 amendments to Rule 26(b). This observation contradicts an important sentence in the Note to the separate provision that entitled a party to her statement. The latter sentence reads: "Courts which treat a party's statement as though it were that of any witness overlook the fact that the party's statement is, without more, admissible in evidence." Moreover, the minutes clearly show that the Committee realized that the reasons that support the provision for parties do not apply with much force to the provision for non-parties.[8] The Committee obviously felt that a rule that presumptively denied a party access to his own statement would create a much greater risk of harm to the truth finding process, and thus to a party with a legitimate claim, than would rules that either denied a party access to non-party statements or that denied non-parties access to their own statements.

The fact that the Committee knew that the interests that would be advanced by the rule giving non-parties access to their statements were substantially less compelling than the interests that were advanced by the rule giving parties access to their statements further bolsters this court's inference that the Committee did not intend the former provision to enable parties to

---

**5.** *See, e.g.,* EXCERPTS FROM THE TAPE OF THE MAY 1966 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 16–17, 27–28, 38–40; see also EXCERPTS FROM THE TAPE OF THE SEPTEMBER 1966 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 12–25.

**6.** *See* APRIL 1969 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 21–26 and 33. The Committee made virtually no effort to reconcile this perception of potential unfairness with rules of evidence that permit cross-examination of a witness about her prior statement without first showing her that statement. *See* Fed.Rule of Ev. 613. The Note to Federal Rule of Evidence 613, which was written by a different committee and after Federal Rule of Civil Procedure 26(b)(3) was promulgated, suggests that to reconcile the two rules courts might be constrained to postpone giving a witness a copy of his statement until after he has been cross-examined. This suggestion would frustrate absolutely the reasoning that

inspired the Civil Rules Committee to add the provision entitling a non-party to acquire a copy of his statement before trial.

**7.** Committee member John P. Frank of Arizona suggested at one point that the provision entitling non-parties to a copy of their own statement "would materially soften the rigger [sic] of the draft we are proposing. . . ." Mr. Frank alluded here to the Committee's decision to maintain a substantial level of work product protection for non-party statements. There is no reason to believe, however, that Mr. Frank believed that the proposed rule would create a vehicle by which parties could gain access to non-party statements taken by opposing counsel. He repeatedly opposed that idea and insisted that the Committee not "trench on *Hickman v. Taylor.*" *See* APRIL 1969 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 21.

**8.** *See* APRIL 1969 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 29–31.

acquire non-party statements without a showing sufficient to penetrate work product protection. Given the fact (discussed further below) that there were lengthy and heated debates about a proposal to entitle parties to discover non-party statements without any special showing, and that those debates preceded the decision to entitle non-parties to their statements, surely the Committee would have considered carefully how much harm to work product interests would have been done by the provision entitling non-parties to their statements if the Committee had expected that provision to enable parties to gain access to such statements without a special showing of justification. This court infers that the Committee engaged in no such debate because it did not intend the rule created for non-parties to significantly affect the rights of parties. Nothing in the minutes indicates that the Committee foresaw that attorneys might try to circumvent work product protections by asking friendly non-party witnesses first to demand their statement from opposing counsel, then to give the attorney who initiated the process a copy.[9] If the Committee had foreseen that scenario it might well have had second thoughts about adopting the rule in favor of non-parties. And even if some members silently foresaw that scenario, they probably assumed that it would not happen with enough frequency to create a serious risk of harm to the incentive system that the Committee so clearly intended to protect through the work product doctrine it codified in the first paragraph of Rule 26(b)(3).

Any remaining doubt about the Committee's intentions is eliminated by an examination of the fate of a proposal, vigorously advanced by a minority of the members of the Committee, led by Dean Charles W. Joiner of Wayne State University Law School, that would have made statements by non-party witnesses who were likely to testify at trial discoverable as a matter of right. Dean Joiner believed that a lawyer ought to have unencumbered access to any statement taken by an opposing lawyer or investigator from any person, party or non-party. Dean Joiner argued repeatedly, both during meetings of the Committee and in correspondence with members, that it was inconsistent with the overall objective of the rules of procedure, namely the just resolution of disputes, to require a special showing of need to justify access to witness statements.[10] He assumed that statements taken from witnesses would be largely or exclusively about the facts of the case, and he insisted that it was fundamentally unfair to condition access to such key material on a party's ability to show that he had a special need that he could not satisfy through other discovery or investigatory devices. Thus, on two different occasions in 1966, Dean Joiner and his allies moved that the Committee adopt an exception to the work product doctrine for statements of non-party witnesses who would testify at trial. Every time the Dean pressed his proposal it was voted down by a substantial margin.[11]

The majority view on the Committee clearly was that statements taken from non-party witnesses constituted key trial preparation material that was entitled to presumptive protection from an adversary under the work product doctrine. Committee member David W. Louisell pointed out during one of the debates on this matter that "a statement of a witness ... is the very heart of trial preparation".[12] Profes-

---

9. A version of this scenario is anticipated in 8 C. Wright & A. Miller, Federal Practice and Procedure § 2028 (1970), and in Blair, *A guide to the New Federal Discovery Practice,* 21 Drake L.Rev. 58, note 25 (1971).

10. *See* SUGGESTED AGENDA: DISCOVERY RULES (agenda for the meeting of November 1965), and letters from Dean Joiner dated November 4, 1965, and August 19, 1966; see also EXCERPTS FROM THE TAPE OF THE MAY 1966 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 15–16, 27 and 38–39;

EXCERPTS FROM THE TAPE OF THE SEPTEMBER 1966 MEETING OF THE ADVISORY COMMITTEE ON CIVIL RULES, at 122–19.

11. *See* EXCERPTS from the May 1966 minutes, at 40; EXCERPTS from the September 1966 minutes at 19; APRIL 1969 MEETING minutes, at 47–48.

12. *See* EXCERPTS from the May 1966 meeting, at 38–39.

sor Louisell went on to argue, persuasively to a majority of the Committee, that to create a broad entitlement to discover non-party witness statements, without a showing of special justification, would be thoroughly inconsistent with the broader notion, clearly accepted by the Committee, that documents generated by counsel or other party agents in preparation for trial should be presumptively protected. The majority felt that to deny work product protection to non-party statements would do great violence to *Hickman v. Taylor* (non-party witness statements were the principal subject of the discovery dispute in *Hickman*) and would jeopardize the values that that seminal opinion sought to promote. Since it was the unequivocal intention of the majority of the Committee to write the rules in a manner that left in place the level of protection that *Hickman* had extended to non-party witness statements, this court cannot permit defendants in this case to use the subpoena power to acquire such statements without first satisfying the requirements that defendants would be forced to satisfy if they sought this material directly from plaintiffs through normal discovery channels.

There are additional reasons for rejecting defendants' argument that permitting use of the subpoena power to acquire non-party witness statements would not damage interests protected by the work product doctrine because good lawyers can protect their work product simply by not asking witnesses to adopt statements taken from them. As acknowledged in the Advisory Committee debates, an adopted statement is much more valuable to a trial lawyer than mere private notes or memoranda about an interview. As Committee member George C. Doub pointed out, a witness can "repudiate without a bit of trouble" a mere "note of either a lawyer who talked to him or an investigator who talked to him" simply by asserting that whoever wrote the note failed to record accurately what the witness said. The Committee recognized that there was much greater persuasive power in an adopted statement.[13] Moreover, as plaintiffs' counsel have argued before this court, an adopted statement is more likely than the private notes of a lawyer to discourage a non-party witness from changing his testimony at trial. Finally, it seems clear that when a witness reviews a statement, corrects and signs it he is more likely to be careful about what he says and more likely to provide accurate, reliable information. The pressure toward accuracy that inheres in the process of adopting a statement is good not only for the lawyer taking the statement but also for the truth finding process generally. A work product rule whose effect was to discourage lawyers and investigators from getting witnesses to review, correct and adopt their statements thus would discourage the kind of trial preparation that is likely to contribute most to the just resolution of disputes (either by settlement based on accurate information or by trial). Work product doctrine should create incentives in lawyers and investigators to develop in the pretrial period the kind of evidence that is most useful and most reliable. It would do serious harm to the incentive system that the work product doctrine is supposed to foster if courts were to rule that the most useful and most reliable form of witness statements were discoverable (even obliquely, through subpoenas) while the least useful and least reliable were not.

For all of the reasons articulated above, the court concludes that it would offend *Hickman v. Taylor* and Federal Rule of Civil Procedure 26(b)(3) to permit a lawyer to use the subpoena power to acquire through a non-party witness a copy of an adopted statement that was taken by opposing counsel and that remains in his files. Thus the court hereby enters an ORDER QUASHING the subpoena directed to Mr. Dunmire.

## THE WAIVER ISSUE

Defense counsel argue that plaintiffs' counsel waived whatever work product pro-

---

**13.** *See* EXCERPTS from the tape of the September 1966 meeting, at 21–22; Mr. Doub was addressing the difference between unadopted and adopted statements as made by a party, but his comments cut in a similar direction for statements from non-party witnesses.

tection otherwise attached to the Dunmire and Sosnow statements by having the witnesses "adopt" their statements within the meaning of Rule 26(b)(3). The waiver theory proceeds along the following lines: by having the witnesses adopt their statements, plaintiffs counsel took a step which they should have known substantially increased the likelihood that defense counsel would come into possession of the statements, either by subpoenaing them or by persuading the witnesses to voluntarily share the statements with defense counsel.

The court's order quashing the Dunmire subpoena disposes of one of the key predicates of the waiver theory. Moreover, since no court had heretofore ruled in a published opinion on the issues raised by the Dunmire subpoena, it hardly seems persuasive to argue that a reasonable attorney should have foreseen a different result, i.e. successful use of the subpoena to acquire a copy of the non-party's statement.

■ The remaining predicate for the waiver theory is that plaintiffs' counsel should have known that there was a substantial risk that Dunmire or Sosnow would be on friendly terms with defendants and would agree, at defendants' behest, to demand a copy of their statements and then share the copy with defendants. Two rejoinders to this line of argument seem sufficient. One begins with the proposition that the party asserting waiver has the burden of proving the facts necessary to support the finding. In this court's judgment, defendants have failed to prove that plaintiffs' counsel should have foreseen a substantial risk, *specific* to Mr. Dunmire or Mr. Sosnow, that they would demand their statements and then give copies to defendants. The mere abstract possibility that a non-party witness might do as defendants suggest is not sufficient to support a finding of waiver. Nor is the fact that Mr. Dunmire and Mr. Sosnow were former employees of defendant Convergent sufficient. Some former employees are on friendly terms with their past employers and some are not. To support a finding of waiver, defendants would have to adduce persuasive evidence that plaintiffs' counsel

knew or should have known specific facts that substantially increased the likelihood that Dunmire or Sosnow would acquire his statement and then give a copy to defendants. Waiver requires a knowing and voluntary relinquishment of a right. Defendants have failed to prove that plaintiffs' counsel took steps that they should have known would cost them their work product rights.

■ Most important, a finding that the act of asking a non-party witness to adopt his statement constitutes a waiver of a lawyer's work product rights would defeat one of the central objectives of Rule 26(b)(3), i.e., to continue the work product protection for both adopted and unadopted non-party statements that the *Hickman* court so emphatically announced.

Finally, it is not irrelevant to the waiver argument that plaintiffs' counsel have persistently sought in this court an order whose effect would be to permit Mr. Sosnow to acquire his statement from plaintiffs' counsel but simultaneously to prohibit defense counsel from reviewing, acquiring or using that statement. By persisting in this effort plaintiffs' counsel demonstrate that they never intended their act of asking Mr. Sosnow to adopt his statement to constitute a waiver of their work product rights. More important, as this court's discussion below indicates, it was not unreasonable of plaintiffs' counsel to assume that they at least had a fighting chance of preventing defense counsel from acquiring a copy of the statement even if Mr. Sosnow turned out to be friendly to defendant Convergent.

## BLOCKING ACCESS BY DEFENDANTS TO THE FRIENDLY WITNESS'S STATEMENT

■ Plaintiffs' counsel ask this court to enter an order that would prohibit defense counsel from reviewing, acquiring or using a copy of the statement that plaintiffs' counsel took from Mr. Sosnow. Mr. Sosnow apparently has agreed, at the behest of defense counsel, to demand from plaintiffs' counsel a copy of that statement. He apparently intends to share the statement

with defense counsel once he acquires it. When this issue first arose this court was inclined to believe that Mr. Sosnow had an absolute right to do with his statement whatever he wished and that the court had no authority to prevent defense counsel from receiving a copy of his statement if Mr. Sosnow elected to share it with them. For the reasons articulated below, the court has changed its mind.

In resisting plaintiffs' motion, defendants rely on the fact that Rule 26(b)(3) gives Mr. Sosnow an unqualified right to acquire his statement from plaintiffs' counsel and on the reasoning in *Hirstein v. American Motors Corporation*, 112 F.R.D. 436 (N.D.Ind.1986). The magistrate who wrote *Hirstein* did not have the benefit of reviewing the minutes of the meetings of the Advisory Committee that drafted the relevant rules. Thus he could not have known that the Committee forcefully rejected a proposal that would have made statements by non-party witnesses discoverable as a matter of right. He did not have an opportunity to see how important it was to a majority of the members of that Committee to perpetuate the fundamental policy of *Hickman* by denying opposing counsel access to trial preparation materials, especially non-party witness statements, unless and until a special showing of justification was made. Nor was the magistrate in a position to know that the *only* reason articulated in the Committee's deliberations for entitling a non-party to a copy of his own statement was concern that it might be unfair to the non-party witness to force him to testify without first seeing the words in his earlier statement.

In refusing to issue an order prohibiting non-party witnesses from sharing copies of their statements with the opponent of the party who had taken the statements the *Hirstein* court relied on (1) the unqualified language of the provision of Rule 26(b)(3) that entitles non-parties to their statements, (2) the absence of any published precedent for entering such an order, and (3) the following sentence from the Wright & Miller treatise: " '[I]t is the witness himself who is entitled to request the statement—although it may be expected that in most cases he will make the request at the urging of one of the parties.' " Quoted at 112 F.R.D. 436–37. How Professors Wright and Miller developed this expectation is unclear. It is clear, however, that there is no allusion in the minutes of the Advisory Committee's meetings to this possibility. For all that those minutes reflect, no member of the Committee foresaw this scenario or devoted any thought to how courts should respond to it.

Moreover, the sentence from their treatise that immediately precedes the sentence quoted in the paragraph above shows that Professors Wright and Miller clearly understood that "This provision [entitling a non-party to his statement] creates no right in a party to the litigation to obtain a copy of a statement of an ordinary witness without the usual showing required for work product." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2028 (1970). Professors Wright and Miller do not attempt to resolve the tension between the right of the non-party witness and the clear intent of the drafters of Rule 26(b)(3) to make non-party witness statements immune from discovery absent a special showing of justification. This court attempts below to resolve that tension.

Two points made earlier should be repeated here. One is that the Advisory Committee did not debate at length or consider in depth the pros and cons of the provision that creates a right in non-parties to their statements. The Committee made no serious effort to track out the implications of creating such a right or to assay the tension between it and the principal thrust of the work product doctrine that the Committee articulated in the main part of Rule 26(b)(3). The second and most important point is that in all the Committee records there is only one articulated reason for entitling non-parties to their statements: to prevent the unfairness or embarrassment to such witnesses that might occur if they were denied access to their statements prior to trial, then offered testimony in good faith at trial that happened to be in some particulars inconsistent with their earlier words.

This court believes that it can enter an order in this matter that fully achieves the purpose of the provision that entitles a non-party witness to a copy of his statement, while at the same time advancing (instead of harming) the overriding interests that the Committee sought to promote by codifying the work product doctrine. That ORDER is that Mr. Sosnow is entitled to his statement, that he may study it as thoroughly as he wishes, but that defendants (directly or indirectly through any agents) may not review the contents of Mr. Sosnow's statement, nor receive or use a copy of it until such time as Mr. Sosnow offers testimony (in deposition or at trial) which is based on refreshing his recollection from his statement or until plaintiffs' counsel cross-examine him on the basis of his statement.[14] If, prior to offering testimony, Mr. Sosnow sends his statement to defendants, they may not read it and must return it to him.

By entering this order the court reinforces the incentive system that the work product doctrine was designed to protect, while at the same time assuring that the purpose that inspired the Advisory Committee to entitle Mr. Sosnow to his statement is achieved. Refusing to restrain defense counsels' access to Mr. Sosnow's statement would encourage lawyers to pressure non-party witnesses to demand and disclose their statements in order to gain access to the work product of opposing counsel without making the special showing of justification that the Supreme Court and the Advisory Committee thought was such an important requirement for the health of the adversary system.

SUMMARY OF ORDERS AND RULINGS:

1. The fact that a statement taken from a non-party is purely factual, or is in the form of a verbatim transcription of her words, does not disqualify that statement from protection under the work product doctrine.

2. Plaintiffs' motion to quash the subpoena directed to Mr. Dunmire is hereby GRANTED.

3. Defendants' motion to compel disclosure of adopted NON–PARTY statements taken by plaintiffs counsel on the ground that plaintiffs' counsel have waived their work product rights in such statements is hereby DENIED.

4. Plaintiffs' motion for an order prohibiting defendants or their agents from reviewing, acquiring or using copies of adopted non-party witness statements taken by plaintiffs counsel is GRANTED until such time as any such witness testifies (in deposition or at trial) on the basis of a memory refreshed by his statement or until plaintiffs' counsel cross-examines any such witness on the basis of his statement.

IT IS SO ORDERED.

**14.** Defendants' argument that Mr. Sosnow's statement might qualify as "past recollection recorded" seems, to put it mildly, strained. Apparently Mr. Sosnow did not make the statement in issue here until several years after the events to which it relates.