**John W. GOTCH, Plaintiff,**

v.

**ENSCO OFFSHORE CO., Defendant,**

v.

**M.L.T.C. CO., Letourneau, Inc., Third–Party Defendants.**

**Civil Action No. 96–0610.**

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Aug. 21, 1996.

568

Lawrence N. Curtis, Lamont P. Domingue, Curtis & Lambert, Lafayette, LA, for plaintiff John W. Gotch.

Alan K. Breaud, Breaud & Lemoine, Lafayette, LA, for defendant Ensco Offshore Co.

## MEMORANDUM RULING

METHVIN, United States Magistrate Judge.

On July 15, 1996, I held a telephone conference with Lawrence N. Curtis, counsel for plaintiff, and Alan K. Breaud, counsel for defendant, in connection with the deposition of Kenneth Pierce which was being taken in Hattiesburg, Mississippi. At the conclusion of the telephone conference, I ordered that the deposition be terminated and ordered the parties to file briefs addressing the proper remedy for an apparent abuse of the discovery process by Mr. Curtis. Despite a prior discovery request, Mr. Curtis had withheld the existence of a recorded statement Mr. Pierce had given plaintiff's investigator. Both parties have filed briefs as required.

### Background

Plaintiff alleges that on October 5, 1994, he was injured on defendant's jack-up drilling rig when a 15– to 20–lb. piece of pipe broke loose from the boom of defendant's crane, fell 80 to 90 feet down the crane's cable and hit the plaintiff on the head and hand. Plaintiff alleges that he was standing close to the cable and holding it with his right hand at the instruction of the crane operator, Kenneth Pierce, who was also his immediate supervisor.

The instant suit was filed on March 18, 1996. On May 8, 1996, an investigator hired by Mr. Curtis recorded a telephone interview with Pierce which was later transcribed and sent to Mr. Curtis. Prior to the interview with Pierce, defendant had propounded interrogatories to plaintiff specifically requesting whether any statements had been taken in connection with the case, or whether any interviews had been conducted, and seeking information to identify such statements/interviews. In responses submitted May 15, 1996, a week after Pierce's recorded statement was taken, plaintiff denied that any statements had been taken, admitting only that interviews had been conducted with Tony Stovall and Michael Lazard. Mr. Curtis states in his brief that he "believed that answer to be accurate when it was made." (Memorandum in Opposition to Proposed Discovery Order and Sanctions, p. 3). However, Mr. Curtis

provides no factual support for this belief, such as information regarding the date on which he requested that his investigator obtain the statement from Kenneth Pierce, or the date he obtained a copy of the transcript of the recorded statement.

On May 22, 1996, plaintiff submitted amended responses to defendant's discovery requests. In supplemental answer to interrogatory No. 5, plaintiff admitted he had a recorded statement of Tony Stovall taken on or about May 16, 1996 by James O. Stephens of Alexandria, Louisiana. In plaintiff's supplemental answer to interrogatory No. 6, plaintiff stated that "James O. Stephens, of Alexandria, Louisiana, has interviewed Kenneth T. Pierce. Mr. Pierce was interviewed on May 8, 1996." Mr. Curtis pointedly failed to indicate that, since the interview was recorded (and later transcribed), it also constituted a "statement" as defined in Rule 26(b)(3).[1]

On July 12, 1996, three days prior to Pierce's deposition, Messrs. Curtis and Breaud were together for the deposition of another witness. Mr. Breaud asked Mr. Curtis whether he had a statement of Pierce, to which Mr. Curtis replied that he did not remember, but would review his file.

At the deposition of Pierce on July 15, 1996, Mr. Curtis questioned Pierce at length regarding whether he had instructed the plaintiff to hold on to the cable and shake it to get the limit switch (pipe) down. Pierce denied it repeatedly. Plaintiff alleges this is a key issue in the case, both as to defendant's negligence and the absence of contributory negligence of the plaintiff. At the conclusion of Mr. Curtis' questioning of Pierce, Mr. Curtis handed Mr. Pierce a copy of the transcript of his recorded statement for the purpose of impeaching him. While the statement has not been produced for consideration by the court (except for the first and last few lines of the statement), there is no dispute that the statement contains certain representations which contradict Pierce's deposition testimony.

When Mr. Breaud realized that Mr. Curtis had a statement of Pierce, despite his earlier denials, he contacted the undersigned magistrate judge, and the telephone conference discussed above was held.

### Analysis

The record before the court shows that Mr. Curtis intentionally withheld the truth regarding the fact that he had obtained a statement from Kenneth Pierce. Although Mr. Curtis argues on the one hand that his interrogatory answers were an oversight, he admits on the other hand that his omissions were intentional: "plaintiff did not disclose the existence of Pierce's statement because plaintiff intended to use the statement as impeachment evidence." (Memorandum in Opposition to Proposed Discovery Order and Sanctions, p. 3). Mr. Curtis' responses to the interrogatories were false and misleading. Doubtless it was to his strategic advantage to withhold information about the existence of the recorded statement, since it maximized the statement's impeachment value. However, in obtaining this advantage, Mr. Curtis committed wholesale violations of the Federal Rules of Civil Procedure as well as the rules of discovery set forth in this court's Scheduling Order. Mr. Curtis offers a number of arguments to justify his actions and avoid sanctions. Each will be addressed in turn.

Mr. Curtis first contends that there was no prohibition against plaintiff obtaining a statement from Pierce because he was not then employed with the defendant. As Mr. Breaud points out, this argument is irrelevant and does not address the issue before the court. Mr. Curtis is not being called to task for taking the statement, but for withholding the truth about its existence.

■ Mr. Curtis' second argument is that under this court's Scheduling Order, the plaintiff was not required to disclose the

---

1. A "statement" is defined in Rule 26(b)(3) F.R.C.P. as:

    (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

existence of the statement prior to using it as impeachment at Pierce's deposition. This argument is without merit. Paragraph 13(b) of the Scheduling Order provides as follows:

> (b) *Impeachment Evidence Under Rules 613 and 801 F.R.E.*
>
> (1) If a party has made a timely discovery request, the respondent shall make full disclosure of any impeachment evidence it *reasonably anticipates* offering at trial under Rules 613 or 801 of the Federal Rules of Evidence. Disclosure shall be made no later than the deadline indicated.

(Scheduling Order, Record Document 17, p. 11). This provision requires disclosure of actual statements taken by opposing counsel—information normally protected by the work-product immunity of Rule 26(b)(3)—if counsel reasonably anticipates offering such statements at trial for impeachment purposes. Paragraph 13(b) does not negate the requirement of truthful interrogatory responses under Rule 33 F.R.C.P. as to **whether** such statements exist.

Under Rule 33(b), each interrogatory is to be answered separately and fully in writing under oath (unless it is objected to) within 30 days. The responses must be signed by the person making them. In this case, plaintiff's counsel signed the responses to defendant's interrogatories, and filed supplemental answers pursuant to Rule 26(e) thereafter. The interrogatories requested *whether* a statement of Kenneth Pierce had been taken, or an interview conducted. Defendant was absolutely entitled to this information.

The qualified work product immunity contained in Rule 26(b)(3) applies only to documents and tangible things—not to facts. Likewise, Paragraph 13(b) of the Scheduling Order applies only to production of the actual impeachment evidence itself—it does not address fact discovery regarding the existence of impeachment material, and Mr. Curtis' argument to the contrary is unsupported.

Furthermore, paragraph 13(b) provides that, "disclosure shall be made **no later than** the deadline indicated." Thus, the rule does not preclude production of the impeachment evidence prior to the deadline in accordance with applicable discovery rules, such as the request of a witness for a copy of his own statement under Rule 26(b)(3).

■ Mr. Curtis next argues that Pierce never requested his statement, and therefore was not entitled to review it pursuant to Rule 26(b)(3). This argument verges on the preposterous, since it has Mr. Curtis blaming the deponent and defense counsel for being misled by his own misstatements. Rule 26(b)(3) normally protects work-product such as recorded witness statements from discovery absent a showing of substantial need and an inability to obtain the substantial equivalent by other means without undue hardship. An exception is made for statements of parties as well as non-parties:

> * * * A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. **Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order.** The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. * * *

Rule 26(b)(3), F.R.C.P.

It is true that Pierce never requested his statement. Apparently, he either forgot the telephone interview in question, or did not realize that it would be transcribed into a statement for impeachment purposes. Although Pierce was no longer employed by defendant at the time of his deposition, I have no doubt that had Mr. Curtis provided truthful responses to the interrogatory requests, Mr. Breaud would have informed Mr. Pierce that he had given a previous statement, and that Mr. Pierce would have requested a copy of his statement prior to his deposition as he is entitled to do under Rule 26(b)(3).

■ Mr. Curtis further argues in this connection that even if Pierce had requested his statement at the outset of his deposition, Mr. Curtis would have been authorized to withhold it until after Pierce testified on direct under the authority of Rule 613 of the Federal Rules of Evidence. The latter rule pro-

vides that in examining a witness concerning a prior statement, "the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel." Mr. Curtis correctly notes that there is some tension between this rule and Rule 26(b)(3), citing the Advisory Committee Notes which state that Rule 613 does not "defeat the application of Rule 26(0)(3) of the Rules of Civil Procedure, as revised, entitling a person on request to a copy of his own statement, *though the operation of the latter may be suspended temporarily.*" (Advisory Committee Notes, 1972, emphases supplied). Mr. Curtis concludes that this note authorized him to withhold Pierce's statement *temporarily* until he testified on direct at his deposition. Again, this argument fails. It is not up to counsel on a unilateral basis to determine whether he or she will turn over a prior statement before, during, or after the witness' testimony. The rules of discovery are meant to operate on the premise of full and accurate disclosure. Where a dispute arises, a party may apply for a protective order, which is what Mr. Curtis should have done in this instance, rather than misleading opposing counsel so as to be able to surprise the witness at his deposition. In fact, the Advisory Committee the Notes to Rule 26(b)(3) (1970 Amendment) provide that "in appropriate cases the court may order a party to be deposed before his statement is produced." It was thus up to the court, and not to Mr. Curtis, to determine whether the statement could be withheld until Pierce's deposition testimony was taken.

▮ Mr. Curtis next argues that even if Pierce could have obtained a copy of his statement under Rule 26(b)(3), defense counsel was not entitled to see it since the statement was plaintiff's work product, entitled to protection under another paragraph of the same rule. In fact, this view was expressed in a thoughtful opinion by Magistrate Judge Wayne D. Brazil, a member of the Advisory Committee which drafted the Federal Rules of Civil Procedure, in *In re Convergent Technologies Second Half 1984 Securities Litigation*, 122 F.R.D. 555, 565–567 (N.D.Cal.1988). In that case, the defendant corporation sought to obtain copies of statements which two former employees had given to plaintiffs. One of the former employees was friendly and agreed to request a copy of his statement under the second paragraph of Rule 26(b)(3), and share it with defendant. Defendant issued a subpoena to the second employee, arguing that the employee had constructive possession of his statement as it had been shown to him earlier.

Judge Brazil's opinion discusses at length the history and purpose of the work product rule contained in Rule 26(b)(3) and its tension with the provision in the same rule allowing non-party witnesses access to their previous statements. Judge Brazil noted that the minutes of the meetings of the Advisory Committee that drafted Rule 26(b)(3 indicate that the Committee did not intend to abrogate work product protection for witness statements, even though the witnesses themselves could obtain copies of their previous statements:

> [T]he Committee forcefully rejected a proposal that would have made statements by non-party witnesses discoverable as a matter of right.... [It was] important ... to a majority of the members of that committee to perpetuate the fundamental policy of Hickman by denying opposing counsel access to trial preparation materials, especially non-party witness statements, unless and until a special showing of justification was made.

*Id.* at 566. Judge Brazil noted that the Committee did not "consider in depth the pros and cons of the provision that creates a right in non-parties to their statements ... or to assay the tension between it and the principal thrust of the work product doctrine that the Committee articulated in the main part of Rule 26(b)(3)." *Id.* at 565. The main concern of the Committee was to "prevent the unfairness or embarrassment to such witnesses that might occur if they were denied access to their statements prior to trial, then offered testimony in good faith at trial that happened to be in some particulars inconsistent with their earlier words." *Id.*

Judge Brazil thus entered an order quashing the subpoena issued to the one witness, and allowing the friendly non-party witness a

copy of his statement, but prohibiting the defendant, through counsel or otherwise, from reviewing the contents of the statement "until such time as [the witness] offers testimony (in deposition or at trial) which is based on refreshing his recollection from his statement or until plaintiffs' counsel cross-examine him on the basis of the statement." *Id.* at 567.

The analysis in *Convergent*, though interesting and persuasive, has not been applied by any other court. In *Ward v. Maritz*, 156 F.R.D. 592 (D.N.J.1994), the court noted that the analysis in *Convergent* was at complete odds with the decision in *H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.*, 108 F.R.D. 686 (S.D.N.Y.1985). In *Hayden*, the court refused to compel the plaintiff to turn over recorded conversations with the defendant corporation's former employee, but suggested that since the defendant was on friendly terms with the former employee, defendant could obtain the statements by having the employee request them under Rule 26(b)(3). The *Ward* court found *Convergent* inapplicable to the facts presented in that case, concluding that production of the statements at issue was required because ethical violations of counsel in obtaining the statements vitiated whatever work product protection they would otherwise have been entitled to.

Furthermore, the facts presented here are distinguishable from those in *Convergent.* *Convergent* dealt with the issue of whether a non-party witness could request his statement under Rule 26(b)(3), and then provide it to opposing counsel in violation of the work product immunity ordinarily granted such statements. The facts here involve untruthful interrogatory responses. No doubt the analysis in *Convergent* might have become relevant if events had unfolded differently: had Mr. Curtis properly answered the interrogatory and advised that he had obtained Pierce's statement, then Mr. Breaud probably would have suggested to Mr. Pierce that he request a copy of his statement prior to the deposition. At this point, Mr. Curtis would have had two options: 1) turn over the statement and allow Pierce to do what he wished with it; or 2) file a motion for protec-

tive order to request permission to withhold the statement until after Pierce's testimony on direct, and/or to obtain an order prohibiting Pierce from showing the statement to defense counsel. At this point, the holding in *Convergent* would become relevant, although not necessarily authoritative. If this court had had the opportunity to address the issues in the instant case prior to Pierce's deposition, the court would have had an opportunity to consider whether Pierce alone, or Pierce as well as defense counsel, would have had an opportunity to review the statement. As it is, this court is faced, like the *Ward* court, with a legal and ethical violation of counsel which I conclude vitiates the work product privilege as to Pierce's statement.

Finally, Mr. Curtis argues that even if he failed to properly respond to the discovery requests, defendant has suffered no prejudice. Mr. Curtis concedes that if he had admitted to having Pierce's statement, Pierce would have requested it and reviewed it prior to his deposition. Mr. Curtis continues:

> The fact that none of this occurred, however, does not prejudice defendant because the only difference any of this would have made is that Pierce might have testified honestly, something he was obligated to do regardless of his statement. Consequently, if this court concludes plaintiff's counsel is guilty of discovery abuse, which is denied, then the remedies this court proposes are too severe considering the lack of prejudice to the defendant.

(Memorandum in Opposition to Proposed Discovery Order and Sanctions, p. 13). The undersigned does not exactly follow Mr. Curtis' argument, since the relevant part of the proposed sanctions as set forth in my previous minute entry—prohibiting use of the July 15 deposition and requiring a redeposition of Pierce after he reviewed his statement—would essentially put the parties in the same position as they would have been had Pierce reviewed his statement prior to his first deposition.

Rule 37(a) allows a party to move for an order compelling disclosure, and for sanctions, when another party fails to answer an interrogatory, or provides an evasive or incomplete answer. Rule 37(c) provides a rem-

edy when a party fails to disclose information required under Rule 26(e) (which requires supplementation of discovery responses). Furthermore, 28 U.S.C. § 1927 provides as follows:

### § 1927. Counsel's liability for excessive costs.

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Considering the foregoing, I conclude that Mr. Curtis has substantially abused the discovery process in this case by submitting patently inaccurate and misleading interrogatory responses. I conclude that the following sanctions are proper in this case and they are imposed as follows:

IT IS HEREBY ORDERED that the deposition of Kenneth Pierce taken July 15, 1996 may not be used in this or any other proceeding as it was taken in violation of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that a full and complete transcript of Pierce's statement be produced to him within 5 days of receipt of this order.

IT IS FURTHER ORDERED that Pierce may be redeposed on a date and time mutually agreeable to counsel, and after he has had an adequate opportunity to review his statement. At the redeposition, no questions or comments will be permitted regarding the prior deposition.

IT IS FURTHER ORDERED that the costs of the redeposition shall be borne by plaintiff's counsel, with the exception of defendant's costs and attorney's fees.

Upon review of the affidavit of Mr. Breaud regarding the attorney's fees, costs and expenses incurred in taking the deposition on July 15, IT IS FURTHER ORDERED that Mr. Curtis personally reimburse Mr. Breaud in the full amount of $2,083.10 within 10 days of receipt of this order.

IT IS FURTHER ORDERED that Mr. Curtis pay a fine to the Clerk of Court in the amount of $500 as a sanction for the discovery abuse discussed above.

Mr. Curtis is reminded that he is not only an officer of this court, but also a member of the American Inn of Court of Acadiana. Two of the Inn's basic tenets are civility and ethics in the practice of law. As a master in the Inn, Mr. Curtis is expected to serve as an example to younger and less experienced members of the bar. The overzealous advocacy which no doubt contributed to the discovery abuse presented in this case is not an appropriate model. Mr. Curtis can do better.

Further violations of the Federal Rules of Civil Procedure or the rules of this court will result in more severe sanctions, including a possible recommendation of suspension from practice in this district for a period of time.