Robert M. BOGAN and Scott M. Bogan, Plaintiffs,

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and Austin E. Hodgkins, Jr., Defendants.**

No. 91 Civ. 2221 (VLB).

United States District Court, S.D. New York.

Oct. 16, 1992.

Michael S. Devorkin, Doar Devorkin & Rieck, New York City, for plaintiffs.

Peter Jason, Schnader, Harrison, Segal & Lewis, New York City, Timothy P. Coon, Bleakly, Platt & Schmidt, White Plains, N.Y., for defendants.

### MEMORANDUM ORDER UPON RECONSIDERATION AND ON 28 USC § 1292 APPLICATION

VINCENT L. BRODERICK, Senior District Judge.

In this litigation growing out of a failed business relationship between plaintiffs and the insurer-defendant, plaintiffs objected to rulings of United States Magistrate Judge Mark D. Fox requiring plaintiffs to produce in discovery:

(1) tape recordings of conversations of non-parties in anticipation of litigation,

(2) verbatim transcripts of conversations with defendants' representatives made for use in litigation,

(3) subsequently prepared verbatim transcripts—which I interpret to mean transcripts of the above kinds, and

(4) a recording made by plaintiffs of a medical interview conducted by a doctor selected by the insurer.

On April 2, 1992, the Magistrate Judge Fox's ruling was upheld on appeal to this court. Plaintiffs request permission to file motions which are attached to the request, for reconsideration or for certification of this discovery dispute as a novel and important issue warranting immediate interlocutory appeal under 28 U.S.C. § 1292(b).

Permission to file each of the motions is granted as requested by plaintiffs. Reconsideration of the April 2, 1992 order upholding the Magistrate Judge's rulings that discovery of the items described above is required, is likewise granted.

Upon reconsideration, the decision of April 2, 1992 sustaining the Magistrate Judge's action is adhered to, for the reasons set forth in the April 2, 1992 memorandum order and for the additional reasons described below. The motion for certification under 28 U.S.C. § 1292(b) is denied for reasons also discussed below.

The Magistrate Judge's rulings were sustained in the April 2, 1992 decision essentially for the following reasons:

(a) It appears from the transcripts of discovery conferences conducted by the Magistrate Judge that many of the objections now pressed were late-blooming, back-up positions developed after initial rulings or agreements on the subject matter. Discovery cannot work effectively as a tool for the swift, inexpensive and just determination of the action pursuant to the second sentence of Rule 1 of the Federal Rules of Civil Procedure, if this is permitted.

■ (b) Tape recordings of interviews with third parties, made without their knowledge, prepared as claimed by plaintiffs in connection with litigation, must be subject to supervision of the court to prevent abuse, both in general and specifically where, as here, findings were made by the Magistrate Judge who was able to judge the entire atmosphere of the discovery process.

(c) While taping of conversations may not be illegal if one party to the conversation consents, surprise production of such tapes at trial would lead to delay and confusion; moreover, known, claimed or suspected contents of such tapes in the hands of one party might lead to distortion of witnesses' testimony because of concern over how the tapes might be used.

(d) Even if the tapes were prepared in connection with the litigation, attorney involvement in encouraging taping of this type raises questions of legal ethics justifying, at the least, provision of the tapes to the adversary so that any relevant issues can be explored.[1]

■ (e) Even if the work product privilege were properly invoked subsequent to the initial resolution of the matter, moreover, verbatim tapes do not involve the absolutely protected kind of work product—"mental impressions, opinions, or legal theories of a attorney," Federal Rules of Civil Procedure, Rule 26(b)(3). On the other hand, the taping practices of plaintiffs and statements, if any, of plaintiffs on their own tapes may be highly relevant under Federal Rule of Evidence 401 and admissible under Rule 801(d)(2). This relevance may relate both to the underlying facts and to plaintiffs' credibility should they testify, providing vital information not otherwise obtainable, and thus may satisfy the requirements of FRCP 26(b)(3) for production.

(f) The court has broad authority to supervise discovery in the interests of justice. The Magistrate Judge, having conducted lengthy conferences with the parties in an effort to resolve discovery disputes, was in the best position to have the proper feel for the appropriate resolution of the problem presented by the tapes, and unless clearly unreasonable, the Magistrate Judge's ruling on points of this type should be upheld.[2]

(g) The medical examination recorded was conducted by one of the defendant insurer's agents; the physician-patient privilege did not apply. Moreover, the objection was initially waived before Magistrate Judge Fox.

In a letter dated April 13, 1992 accompanying plaintiffs' motion, plaintiffs' counsel states in part:

"In effect, the decision [of the Magistrate Judge upheld by this court on April 2, 1992] will require any tapes of interviews of non-parties made while investigating a case to be shared with the other side. We believe that in the past the Second Circuit has forbidden similar attempts to interfere with the right to interview witnesses without access to the other side. *IBM v. Edelstein*, 526 F.2d 37 (2d Cir.1985) [1975] (Mandamus).

**1.** If the tapes were not prepared in connection with litigation, they are not subject to the claimed work product privilege.

**2.** Plaintiffs' argument that questions of law cannot be resolved based on the feel of the case is correct but inapposite. The feel of the case is important to discretionary supervision of discovery. I have independently concluded that no work product or other privilege applies to the material the Magistrate Judge ordered produced, and further that if it did, the requirements for production despite any claimed privilege have been fulfilled.

"Perhaps most importantly, the non-parties on these tapes have not been given a chance to object to production, and could very well be injured by these disclosures, since some are subject to economic retaliation for talking to plaintiffs.

\*  \*  \*  \*  \*  \*

"... [U]nless this Court grants our request for reconsideration or Section 1292 certification, our only opportunity to obtain review to decide these novel and important issues and to protect these important privileges will be through criminal contempt or an extraordinary writ."

I disagree with each of these arguments.

The Magistrate Judge's decision calls for discovery of tapes surreptitiously made by the plaintiffs (not counsel) without the knowledge of the other parties to the conversations. This in no way interferes with the right of plaintiffs or plaintiffs' counsel to interview witnesses, except where surreptitious taping without the consent of the interviewee is involved. Even there, the Magistrate Judge's rulings do not ban such practices and are limited to allowing discovery of such tapes.

The *IBM* case is thus entirely mis-cited. *IBM* involved affirmative requirements concerning how interviews of witnesses must be conducted, not remotely involved here. Plaintiffs or their counsel may take notes or not as they choose—and so far as the order now involved is concerned may tape the interviews, with the sole proviso that surreptitious tapes, if any, are subject to discovery.

For several reasons, it ill behooves plaintiffs to complain that discovery of tapes secretly made by plaintiff can injure third parties:

(i) Plaintiffs had ample opportunity before the Magistrate Judge or this court to submit affidavits or other evidence (including even hearsay evidence), with request that they be considered *in camera* if necessary, executed by any specific third parties who have been told that their conversations have been taped and who object to the

discovery ordered by the Magistrate Judge. Either these parties were never contacted by the plaintiffs or plaintiffs' attorney, or they were contacted and in fact had no objection. Plaintiffs can hardly place the burden on the court or the adversary to locate and further interrogate persons plaintiffs presumably do not want the adversary to know made any statements which may have been provided concerning the adversary.

(ii) Plaintiffs have not offered to destroy the surreptitiously recorded tapes they have taken (including any copies of transcripts taken from them), or to restrict their own use of such tapes. The tapees have had no opportunity to object to the taping of the conversations involved, or to the use of the tapes as plaintiffs see fit—but plaintiffs object to their adversaries even knowing what is on those tapes.

The suggestion by plaintiffs' counsel that tapes surreptitiously obtained by plaintiffs could result in injury to innocent third parties once made available to the defendants is troubling in two respects:

(A) plaintiffs appear unwilling to recognize their own responsibility for any such possible injury, and they seek to use the possibility of such injury to protect any litigation advantage they may or may not secure through use of such tapes, and

(B) it is possible that injury to third parties may ensue whether or not defendants are given access to the tapes.

Possible means of dealing with the risk of harm to third parties as a result of the discovery ordered by the Magistrate Judge and upheld in the present ruling are, however, available and are not foreclosed by the Magistrate Judge's decision or its affirmance by this court.

1. There is nothing in the Magistrate Judge's ruling or its affirmance which precludes either party from seeking, or the Magistrate Judge on his own initiative from considering, conditioning the availability of the tapes to defendants upon a notice by mailing, for which defendants would furnish the postage, to any third party whose conversation with one of the

plaintiffs or their agent was surreptitiously taped. The notice would inform such third party of the fact of the taping and it would offer the tapee the opportunity to listen to the tape and to make, within a defined time period, any application to the Magistrate Judge which might be appropriate.

2. There is nothing in the Magistrate Judge's ruling or its affirmance preventing the Magistrate Judge, on application of a party or on his own motion, from imposing a protective order limiting access to the tapes in question to inspection by counsel and use if appropriate in this litigation, and specifically prohibiting disclosure to the clients or use of the tapes or of any information derived from such tapes for purposes outside this litigation.

3. There is nothing in the Magistrate Judge's ruling or its affirmance preventing plaintiffs from seeking permission, in lieu of production, to destroy the tapes involved, together with any copies or transcripts of them, if harm to third parties (for which plaintiffs might well be responsible, having initiating the nonconsensual taping involved) is actually considered likely. If such an application is made, of course, the Magistrate Judge would be free to condition the granting of any such relief on the destruction by plaintiffs of all such items rather than only those unilaterally selected for destruction by plaintiffs. Based upon plaintiffs' suggestion that there is risk that the tapes may result in injury to those whose conversations were taped, such destruction at the end of the case may also be appropriate even if the tapes are retained subject to appropriate discovery for the duration of the litigation. How such destruction might be effectuated should plaintiffs decline to consent is not now in issue.[3]

■ The assumption that the ruling now reaffirmed can only be reviewed through 28 U.S.C. § 1292(b), criminal contempt, or an extraordinary writ is entirely incorrect. If a final judgment in this case is substan-

tially and improperly influenced by the ruling made here, it can be challenged on that basis as can any other *nisi prius* ruling. Interlocutory appeals from discovery rulings are not favored, and ordinarily tend to delay litigation and add to the burdens of the appellate courts with little justification.

[4] Should plaintiffs elect to safeguard the privacy of the secretly recorded tapes of their conversations with others at the cost of violating the Magistrate Judge's rulings as upheld by this court, criminal contempt sanctions are not the only possible—or necessarily inevitable—consequence. Rule 37 of the Federal Rules of Civil Procedure permits numerous other steps to be taken, e.g., dismissal of the complaint or preclusion.

■ Adverse inferences might also be drawn from failure to produce evidence within the control of a party; such inferences might refer to specific matters or to the entire case. See generally *Interstate Circuit v. United States*, 306 U.S. 208, 225–26, 59 S.Ct. 467, 473–74, 83 L.Ed. 610 (1939); *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917); *Welsh v. United States*, 844 F.2d 1239, 1245–47 (6th Cir.1988).

Failure to produce the tapes might also leave open the possibility that their existence has been or would be used to influence witnesses at depositions or trials. This might occur if such witnesses were told that tapes of their conversations existed, causing them to fear that they could be damaged or impeached. Absent production of the tapes to limit the scope of such risks, wider separate inquiry into conversations with actual or potential witnesses in which the existence of surreptitious tapes was mentioned might have to be considered. It would be premature, of course, to determine which, if any, of these or other consequences might flow from disobedience of the Magistrate Judge's order upheld here.

---

**3.** The Magistrate Judge could also consider an application for *in camera* examination of the tapes prior to any protective ruling. But this might require more knowledge of the background underlying each tape than could be ob-

tained without disclosing the contents for the purpose of hearing argument on the content of each tape. Moreover, such a procedure would place a substantial burden on the federal judicial system.

The Magistrate Judge's ruling is hardly so pathbreaking as plaintiffs suggest.[4] The reason for plaintiffs' view to the contrary is clearly indicated in the application by them for certification under 28 U.S.C. § 1292(b). They fail to include in their factual recitation the surreptitious character of the taping of conversations involved.

Plaintiffs in their application also include language suggesting that the court has ordered "a party to produce to its adversary witness interviews made by a party to investigate his case solely because the party tape recorded the interviews." That is not the purport of the Magistrate Judge's ruling or its affirmance here; both are limited to the discovery of tapes made without knowledge of the interviewee, and do not extend to notes of any interviews. The only transcripts to be produced pertain to surreptitiously taped interviews.

Plaintiffs have cited no case which actually supports their position. What is at stake here is not a novel and important question of law, but a matter of effective trial administration. To delay disposition of this case on the merits while such a contention as that now made is pursued prior to judgment, would be contrary to the objectives of 28 U.S.C. § 1291 and an abuse of § 1292.

Plaintiffs' counsel argue in the letter of April 13:

"Based on my discussions with other counsel in this District and my experiences ... counsel in this District widely accept and follow the practice that clients or investigators may secretly tape record their conversations investigating a civil or criminal case without fear that these efforts must be shared with an adversary."

This court is not aware that such is the fact in civil cases absent special circumstances not suggested here, or that the products of such efforts would be immune from ordinary discovery criteria. The widespread practice claimed in the letter would, if true, warrant serious attention because of obvious potentially harmful effects. If one-sided secret taping of potential witnesses without discovery were allowed, it could have an unfairly prejudicial effect: witnesses could be subjected to potential blackmail or to surprise introduction of tapes at trial. It is precisely such so-called hardball tactics which the courts should be on guard against. Here, the extremely mild remedy of discovery has been chosen by the Magistrate Judge.

Secret taping for law enforcement and other specific purposes is permitted in an open society under strict controls. Where one party only consents to the taping, its use for litigation in the one-sided manner suggested by plaintiffs should not be given blanket approval absent special circumstances not shown before the Magistrate Judge or even alleged here.

SO ORDERED.

---

**4.** Plaintiffs cite in their letter of April 13, 1992 but reject *Haigh v. Matsushita Elec. Corp. of*   *America,* 676 F.Supp. 1332 (E.D.Va.1987).