**SEA-ROY CORPORATION and Ameramax Contractors Equipment and Supplies, Inc., Plaintiffs–Counterdefendants,**

v.

**SUNBELT EQUIPMENT & RENTALS, INC., Defendant,**

**and PARTS R PARTS, INC. a/k/a P.R.P., Inc.; Multiquip, Inc.; and Rammax Maschinenbau, GmbH, Defendants–Counterclaimants,**

v.

**Chris R. SMITH and Trimm, Inc., Additional Parties on Counterclaims.**

No. 1:94CV00059.

United States District Court, M.D. North Carolina, Durham Division.

March 31, 1997.

---

Norwood Robinson, Michael Lindsay Robinson, Kevin L. Miller, Robinson & Lawing, Winston–Salem, NC, Daniel Snipes Johnson, King, Walker, Lambe & Crabtree, Durham, NC, for Sea–Roy Corp., Ameramax Contractors Equipment and Supplies, Inc.

Kiah T. Ford, IV, Michael George Adams, Parker, Poe, Adams & Bernstein, Charlotte, NC, for Parts R Parts, Inc.

Michael Lindsay Robinson, Kevin L. Miller, Robinson & Lawing, Winston–Salem, NC, Daniel Snipes Johnson, King, Walker, Lambe & Crabtree, Durham, NC, for Trimm, Inc., Chris R. Smith.

Richard M. Hutson, II, Hutson, Hughes & Powell, Durham, NC, Alan M. Wiseman, Robert E. Leidenheimer, Jr., Howrey & Simon, Washington, DC, Gaspare J. Bono, Baker & Hostetler, Washington, DC, for Rammax Maschinenbau, GmbH, Multiquip, Inc.

Joseph W. Moss, Matthew L. Mason, Moss & Mason, Greensboro, NC, C. Ralph Kinsey, Jr., Richard L. Farley, Underwood Kinsey Warren & Tucker, P.A., Charlotte, NC, for Sunbelt Equipment & Rentals, Inc.

### ORDER

ELIASON, United States Magistrate Judge.

The parties present the following issue: Whether secretly recorded telephonic tape recordings of parties, witnesses, potential witnesses, or others, can be withheld from discovery as work product pursuant to Fed. R.Civ.P. 26(b)(3)? Defendants Multiquip, Inc. ("Multiquip") and Rammax Maschinenbau, GmbH ("Rammax") request the Court to compel plaintiffs to disclose secretly recorded audio tapes.

This action was filed in February 1994. In June, plaintiffs provided defendant Parts R Parts, Inc. ("PRP") with a privilege log which indicated that plaintiffs had multi-page memoranda concerning conversations between plaintiffs, owners and their employees, and individuals in the construction industry. Plaintiffs told PRP that they would disclose the surreptitiously tape recorded conversations. There were also three multi-page transcripts of telephone conversations surreptitiously recorded in November 1992 and May 1993 and transcribed by plaintiffs' counsel. Plaintiffs evidently showed a dozen of the tapes to defendant PRP in June 1994 and began copying the tapes. However, on July 15, 1996, plaintiffs informed PRP that they would not be providing the tapes.

On September 10, 1996, plaintiffs clarified their position and stated that they would withhold 83 of the 85 tapes as work product.

The two remaining tapes were recordings of conversations with Heinz Schutt of Rammax (June 1992) and with Hermann Greschner of Rammax (date unknown). In addition, plaintiffs have provided transcripts prepared by plaintiffs' counsel's office of four of the taped conversations. Two of the transcripts relate to two third-party deponents. Two other third-party deponents have not had their taped conversation or its transcript released. It is unclear whether the remaining tapes involve third-party witnesses or potential witnesses. Plaintiff listed the withheld calls which started in November 1992 and continued through 1995.

Chris R. Smith, the principal and owner of plaintiff Sea–Roy Corporation ("Sea–Roy"), provides an affidavit setting out the basis for the tape recordings made by him or other corporate personnel. He relates that in 1991, defendant Rammax was Sea–Roy's key supplier. When Rammax appointed defendant Multiquip as a supplier, this eliminated Sea–Roy's exclusive distributorship which had lasted for ten years. Other companies then decreased Sea–Roy's discount on part orders. In November 1992, Rammax terminated all dealings with Sea–Roy. In December 1992, defendant PRP refused to sell engine parts to plaintiff.

Smith claims that he decided to tape conversations because of his belief that some or all of the current defendants were taking concerted action in order to injure plaintiffs. He states the taping was the direct result of his concern over the possibility of litigation after counsel advised him to keep track of rumors that were circulating about plaintiff Sea–Roy. Counsel did not suggest taping conversations. Tapes or transcripts of the tapes of the agents of current defendants have been surrendered to counsel. Plaintiffs changed their minds about turning over tapes to defendant PRP after they learned that defendant PRP was itself claiming work product protection with respect to tapes which it had made. (PRP is not a party to the motion to compel.)

■■ Work product protection is not a privilege within the meaning of Federal Rules of Evidence 501. Rather, it is a tool of judicial administration to safeguard the ad-versarial process, and does not have an intrinsic value in itself outside the litigation area. *Pete Rinaldi's Fast Foods v. Great American Ins. Companies,* 123 F.R.D. 198 (M.D.N.C.1988). As a result, in reviewing claims of work product protection, the Court will give the claim the narrowest construction consistent with the purpose of work product. The party (in this case plaintiffs) requesting protection bears the burden of proving entitlement. *Id.* at 201.

Defendants do not dispute that tape recorded conversations may, in fact, constitute work product material. *See, e.g., Ward v. Maritz, Inc.,* 156 F.R.D. 592, 595–597 (D.N.J. 1994) (surreptitious recording of others); *Suggs v. Whitaker,* 152 F.R.D. 501 (M.D.N.C. 1993) (defendant's own insured); *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.,* 143 F.R.D. 601 (M.D.N.C.1992) (plaintiff's President's self-observations and impression of events at work site). Instead, they assert that unprofessional attorney conduct can constitute grounds to vitiate the work product protection. *Moody v. IRS,* 654 F.2d 795, 799–801 (D.C.Cir.1981). In fact, a number of courts have followed just that proposition with respect to the secret taping of conversations. *Chapman & Cole, Ltd. v. Itel Container Intern. B.V.,* 865 F.2d 676, 686 (5th Cir.), *cert. denied sub nom,* 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989); *Parrott v. Wilson,* 707 F.2d 1262, 1270 (11th Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *Ward v. Maritz, Inc.,* 156 F.R.D. 592, 598 (D.N.J.1994) (collecting cases); *Wilson v. Lamb,* 125 F.R.D. 142, 143 (E.D.Ky.1989); *Haigh v. Matsushita Elec. Corp. of America,* 676 F.Supp. 1332, 1357 (E.D.Va.1987); *see H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 108 F.R.D. 686, 690–691 (S.D.N.Y.1985).

In each of those cases, the courts had relied in whole or in part on the American Bar Association's *Model Rules of Professional Conduct.* Its ethics opinions hold that ABA rules prohibit attorneys from clandestinely tape recording conversations. In 1974, the ABA issued ABA Formal Op. 337 which holds that except for certain law enforcement matters, no attorney should record any conversation, whether by tape or electronic de-

vice, without the consent or prior knowledge of all parties to the conversation. Opinion 337 cited the following history of prior related rulings: (1) 1936—prosecution attorney could not ethically use a recording of a conversation between a defense attorney and client; (2) 1961—attorneys must disclose to a court and opposing counsel before recording in court; and (3) 1967—lawyer could not make a recording of a conversation with a client or opposing counsel without prior disclosure.

Opinion 337 surveyed state ethical opinions and found them to support the ABA pattern with only one exception. The decision was based on the appearance of impropriety and presumed public distaste for secret recordings even though the action of recording was not illegal. A year later, the ABA refused a request to reconsider Formal Op. 337. ABA Informal Op. 1320 (1975).

 Plaintiffs first argue that even if this Court were to hold that the ABA Model Rules govern the ethical standards of attorneys appearing before it, those rules do not apply to this case because the client, not the attorney, did the taping. Furthermore, the client's affidavit indicates that the client, on his own, devised and executed the telephone recording scheme.[1] However, the lack of attorney initiation does not insulate the client when there is later attorney involvement with the secret recordings. Here, the sheer number of tape recordings (85) indicates that counsel was or should have been aware of the situation. This is further demonstrated by the three-year time period in which the recordings were made. And finally, counsel actually made transcripts from the recordings. These factors persuade the Court that there was sufficient attorney involvement and knowledge to subject the client's conduct to attorney ethics rules. *Haigh*, 676 F.Supp. 1332.

 A more direct reason for not distinguishing between the attorney and the client may be found in the structure of Rule 26(b)(3) itself. Since the 1970 amendments, the client, as well as the attorney, come under the rule's umbrella.[2] At one time, a party did not have work product protection. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Rules of Practice and Procedure* § 2024, at 364 (1994). Nothing in this history provides even the remotest suggestion that a rule originally designed to protect an attorney's work product should now be construed to give greater protection to clients and *pro se* parties. Therefore, if attorneys must disclose at the time of recording, the same duty should be imposed on the client and parties.

 Plaintiffs next urge the Court not to rely on the above-cited cases because they were all premised on use of the ABA's *Model Code of Professional Conduct.* Plaintiffs argue the Model Code has been supplanted since 1985, when North Carolina adopted the *North Carolina Rules of Professional Conduct* ("RPC"). This same argument was rejected in *Ward v. Maritz, Inc.*, 156 F.R.D. 592 (D.N.J.1994) (New Jersey RPC). There, the court found that the *New Jersey Rules of Professional Conduct* include the same. prohibitions against dishonesty, fraud, deceit, or misrepresentation which was the basis of ABA Formal Op. 337 (1974). *Id.* at 597. The same is true for the North Carolina RPC which was "patterned after the American Bar Association's *Model Rules of Professional Conduct*, [although] they incorporated certain unique features." *1988 Annotated Rules of Professional Conduct,* Lawyers Handbook, Forward by James Y. Preston, President.

Next, plaintiffs point to RPC 171 (1994) as evidence that in North Carolina the surreptitious recording of conversations by attorneys is not unethical. That ethics opinion states that the surreptitious recording of a conver-

---

1. Defendants point out that in some states surreptitious recordings are illegal in spite of federal law. Because of potential concerns about the constitutionality of such statutes applied to interstate transactions, the Court declines to make a decision based on that difficult submission.

2. The work product protection of Fed.R.Civ.P. 26(b)(3) covers material "prepared in anticipation of litigation or for trial by or *for another party* or by or *for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R.Civ.P. 26(b)(3) (emphasis added).

sation with an attorney regarding a pending case does not violate the Rules of Professional Conduct. Nevertheless, the opinion added: "However, as a matter of professionalism, lawyers are encouraged to disclose to the other lawyer that a conversation is being tape recorded." This somewhat ambiguous approval of secret recordings is certainly less than a resounding affirmation of it.[3]

■ The Court will first address plaintiffs' argument that this Court is bound by the North Carolina Rules of Professional Conduct because it has adopted those rules as its ethical standards in Local Rule 505(b). While the statement with respect to adoption is correct, the preclusive or encompassing effect of such adoption is not. Even though a federal district court purportedly adopts state rules of professional conduct with respect to those attorneys practicing before it, it must use federal law to interpret and apply those rules. *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 108 (M.D.N.C.1993). In doing this, the Court may look to other federal cases for interpretation of federal law and widely accepted national codes of conduct, such as the ABA Model Rules. *Id.*

The Court declines the opportunity to resolve whether North Carolina RPC 171 opinion concerning secretly recording opposing counsel constitutes a significant departure from the standards of ethical conduct approved by the previously cited federal courts and the ABA Model Rules. In any event, the parties have failed to present the Court with sufficient national survey evidence for the Court to conduct such an inquiry.

■ The structure of Rule 26(b)(3) itself provides a more direct reason for declining to provide work product protection to the surreptitious recording of conversations by either attorneys or clients. The rule both encompasses electronically recorded statements and regulates them. Parties have a right to their adopted and verbatim statements and other persons may request a copy of theirs.[4] *Gotch v. Ensco Offshore Co.*, 168 F.R.D. 567, 570 (W.D.La.1996); *Wilson v. Lamb*, 125 F.R.D. 142; *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 108 F.R.D. 686. The right to request necessarily presumes awareness of the statement. Therefore, Rule 26(b)(3) implicitly requires disclosure of the existence of surreptitiously recorded statements at some time prior to trial. As a matter of policy and prudential construction, this Court determines that Rule 26(b)(3) requires a recording party to inform the person being recorded at

---

3. In *Ward v. Maritz, Inc.*, 156 F.R.D. 592, 598 (D.N.J.1994), the court rejected a similar argument, this time based on a recent New York opinion which cited changing normative standards over time as a reason for now permitting *surreptitious attorney recording of conversations*, except with adverse parties or represented witnesses. The court expressly noted that discoverability will not be judged on the basis of ethics alone. Rather, it decided that,

> concerns of fairness and safeguarding the adversary process require the production of the tape recordings. Without such production, plaintiff unilaterally maintains the ability to use the secretly recorded statements for discovery purposes and for impeachment purposes at trial. Fundamental fairness requires that the defense be afforded the opportunity, if Maritz so desires, to use the statements to impeach the credibility of the witnesses, a capability that rests solely with plaintiff at this point.

*Id.* at 598.

4. Rule 26(b)(3) states in relevant part:

(3) **Trial Preparation: Materials**
A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

Some courts have considered withholding from the opposing side, a statement by a nonparty until the time of deposition or trial in order to preserve as much work product protection for as long as possible. *Gotch v. Ensco Offshore Co.*, 168 F.R.D. 567, 571–572 (W.D.La.1996); *In re Convergent Technologies Second Half 1984 Securities Litigation*, 122 F.R.D. 555, 565–567 (N.D.Cal.1988).

the time of the recording in order to qualify the statement for work product protection.[5] This construction significantly eases the administration of Rule 26(b)(3).[6] The rule encourages parties to inform persons who have been recorded of that fact so they know about it. The Court can then rely on them to enforce their own rights. If a party does choose to surreptitiously record conversations, the statements will not be accorded work product protection. In that event, should a party want to obtain the statement of a non-party witness or potential witness, the Court need only resolve the less burdensome issue of relevancy untainted by work product disputes.[7] This construction has an added benefit of removing any basis for encouraging, permitting, or rewarding parties for doing what would be considered unethical behavior for an attorney. And, to the extent that the ethical considerations are in any part based on fear that allowing secret recordings increases the temptation to manufacture and manipulate evidence, then the restraint most surely should be applied to all and as suggested here.

■ In the instant case, plaintiff did not inform people that their conversations were being recorded and the recordings have been identified. Therefore, the recordings have lost any work product protection. No issue of relevancy has been raised.

**IT IS THEREFORE ORDERED** that defendant Rammax Maschinenbau, GmbH and Multiquip, Inc.'s motion to compel (docket no. 218) is granted, and plaintiffs shall turn over the tapes and transcripts to defendants forthwith.

---

5. This construction also is in line with those courts which find that taped conversations are a low level type of work product which deserves little, if any, protection and are readily produced under the Rule 26(b)(3) exceptions for need for their value to factual accuracy, credibility, and other trial purposes. *Bogan v. Northwestern Mut. Life Ins. Co.*, 144 F.R.D. 51, 53 (S.D.N.Y.1992); *Ward v. Maritz, Inc.*, 156 F.R.D. at 598.

6. There is a tension between Fed.R.Civ.P. 26(b)(3) and Fed.R.Evid. 613. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2028, at 413–415 (1970). Rule 613 of the Federal Rules of Evidence permits a witness to be impeached before a prior inconsistent statement is revealed and the statement may be admitted into evidence before the witness has an opportunity to explain or deny it. 28 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* §§ 6202 & 6203 (1993). Yet, Fed.R.Civ.P. 26(b)(3) permits persons access to their adopted or verbatim recorded statements.

The treatise writers would reconcile the tension by encouraging courts, when appropriate, to schedule non-parties access to their statements after they have been deposed or testified. 8 Wright, Miller & Marcus, *supra*, § 2028. The construction of Rule 26(b)(3) suggested today does not resolve that tension. It may, however, ameliorate some of the criticism leveled at Fed.R.Evid. 613. This being that it is more unfair to witnesses and time-consuming than the prior "traditional" approach, 28 Wright & Gold, *supra*, § 6202. By encouraging a party to inform the potential witness that the conversation will be recorded, this may reduce the "unfair" surprise when the recording is revealed for the first time at the deposition or trial as Fed.R.Evid. 613 allows. And, a party who does not disclose may jeopardize its Fed.R.Evid. 613 advantage.

7. Because Rule 26(b)(3) both provides taped conversations with work product protection, yet has special disclosure provisions for adopted or verbatim statements, there exists a certain internal tension. 8 Wright, Miller & Marcus, *supra*, § 2028. The suggested construction will not eliminate all these problems, but the setting of some bright line interpretation markers should be helpful to the parties and the court.