**Elizabeth Miles OTTO, Plaintiff,**

v.

**BOX U.S.A. GROUP, INC., Four M Manufacturing Group of Georgia, Inc., and Sid Dunken, Defendants.**

**Civ.A. No. 1:96–CV–2296–JEC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 2, 1997.

---

Edward D. Buckley, III, Charles Richardson Bliss, Rose E. Goff, Greene Buckley Jones & McQueen, Atlanta, GA, for Plaintiff.

Emmet J. Bondurant, II, Edward Bryan Krugman, Paul Howard Schwartz, Bondurant Mixson & Elmore, Atlanta, GA, for Box USA Group, Inc. and Four M Manufacturing Group of Georgia, Inc.

Richard Lance Robbins, Lisa Combs Foster, Sutherland Asbill & Brennan, Atlanta, GA, for Sid H. Dunken.

## MAGISTRATE JUDGE'S ORDER

HARPER, United States Magistrate Judge.

In this case the defendants have moved for an order compelling discovery of a secretly tape-recorded conversation between plaintiff and a third-party witness in this case. (Doc. No. 25). Plaintiff asserts that the tape is protected by the work-product doctrine announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and later codified through Fed.R.Civ.P. 26(b)(3). Based on the following analysis, the undersigned holds that, while the work-product doctrine may apply, by secretly recording the conversation plaintiff has brought the recordings outside of the protection of that doctrine. Therefore, the undersigned GRANTS defendant's motion to compel and ORDERS plaintiff to release a copy of the tape to defendant by December 10, 1997.

Plaintiff recorded the conversation with Ted Clark in January, 1996—a short time before she hired her attorneys. On her own accord, plaintiff created what she now asserts to be work-product. It is the law of this District that a plaintiff who creates work-product material before hiring an attorney is still permitted to take advantage of the work-product doctrine. *Moore v. Tri–City Hospital Authority,* 118 F.R.D. 646, 649–50 (N.D.Ga.1988) (Hall, J.). In *Moore,* the plaintiff had started a diary which reflected his thoughts on "persons who could serve as witnesses, attorneys who could assist [him], and legal arguments that might be made on [his] behalf." *Id.* at 650. Neither party disputes that it would be considered work-product for an attorney to consensually record an interview with a third-party witness.

Past cases have stripped such recordings of any work-product protection where the tapes were secretly recorded by an attorney, considering such actions to violate Bar ethics rules. The Eleventh Circuit Court of Appeals held that an attorney who clandestinely recorded conversations with witnesses violated the ethical rulings of the American Bar Association, denigrating the integrity of the adversarial process, and vitiating whatever work-product protection the tapes would otherwise deserve. *Parrott v. Wilson,* 707 F.2d 1262, 1271–72 (11th Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983)(citing ABA Committee on Professional Responsibility, Formal opinions, No. 337 (1974)). *Parrott,* a case which plaintiff notably does not mention in her response, held that disclosure would be an appropriate remedy since disclosure would not "traumatize[ ] the adversary process more that the underlying legal misbehavior." *Parrott,* 707 F.2d at 1271–72 citing *Moody v. Internal Revenue Service,* 654 F.2d 795, 801 (D.C.Cir.1981). *See also Wilson v. Lamb,* 125 F.R.D. 142 (E.D.Ky.1989) (holding same).

■ Since *Parrott*, cases facing similar facts have prohibited attorneys from profiting from ethically questionable behavior; however, no court has specifically applied this rule to pro se plaintiffs or plaintiffs who were not represented at the time of the recording.[1] Attorneys cannot encourage the secret taping of witnesses by plaintiff and then depend on the protection of the work-product shield. *Bogan v. Northwestern Mutual Life Insurance Co.*, 144 F.R.D. 51, 54–56 (S.D.N.Y.1992) ("It is precisely such so-called hardball tactics which the Courts should be on guard against."); *Ward v. Maritz, Inc.*, 156 F.R.D. 592, 598 (D.N.J.1994). Attorneys cannot even acquiesce in the practice by accepting a large number of tapes made by the plaintiff. *Haigh v. Matsushita Elec. Corp. of America*, 676 F.Supp. 1332, 1356–57 (E.D.Va. 1987); *Sea–Roy Corporation v. Sunbelt Equipment & Rentals, Inc.*, 172 F.R.D. 179, 183 (M.D.N.C.1997).

Yet, as plaintiff points out, all of the above cases are based on the ethics rules for attorneys. She argues that such rules do not, and should not, apply to the layperson who is preparing for an imminent lawsuit. In essence, she wants the protection of the work-product doctrine—an offspring of the adversarial legal system—without the responsibilities that make the adversarial system more civil. The question thus facing this court is whether the rule in *Parrott* extends those responsibilities to the lay public. The undersigned believes that it does.

Recently, the District Court for the Middle District of North Carolina stated, in dicta, that since the rule providing for the work-product doctrine, Fed.R.Civ.P. 26(b)(3), extends the doctrine to both attorney and the client, there is not "even the remotest suggestion that a rule originally designed to protect an attorney's work-product should now be construed to give greater protection to clients and pro se parties." *Sea–Roy Corporation, supra*, 172 F.R.D. at 183. The court continues, stating that "if attorneys must disclose at the time of recording, the same duty should be imposed on the client and parties." *Id.* However, unlike this case, the attorneys in *Sea–Roy* acquiesced in the recording by accepting a steady stream of such tapes, although the lawyers did not actually direct the clients to make such secret tapes. *Id.* The North Carolina court then held that the witnesses could obtain their recorded and transcribed statements under Fed.R.Civ.P. 26(b)(3). *Id.* at 184–85. Thus, the court then concluded that it "need only resolve the less burdensome issue of relevancy untainted by work-product disputes." *Id.* at 185. Yet, it still concluded that the tapes had lost the protection of the work-product doctrine. *Id.*

Unlike in *Sea–Roy*, the attorneys here did not acquiesce to continuous, secret taping; in fact, the attorneys had not even been hired when plaintiff made this one tape. Furthermore, the third-party witness in this case has not requested the statement under Rule 26(b)(3), thus closing that avenue of analysis.[2] Thus, while *Sea–Roy* is persuasive, it is not conclusive.

The purposes of the work-product doctrine were originally outlined in *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). The doctrine provides an attorney with the ability to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* It maintains a balanced and fair adversarial competition, as "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." 329 U.S. at 516, 67 S.Ct. at 396. As an officer of the court, the attorney gains the

---

**1.** Although the Court in *In re Hunter Studios, Inc.*, 164 B.R. 431, 438 (Bankr.E.D.N.Y.1994), found that tapes recorded by an unrepresented person, who later became an attorney involved in the case, could be admissible, the Court did not consider whether such tapes would be shielded by the work-product doctrine.

**2.** Other courts have found that the availability of the third-party witness to request the tape under Fed.R.Civ.P. 26(b)(3) undermines that claim of a work-product privilege and, in effect, obviates the need for this detailed analysis of the work-product privilege. Unfortunately, the undersigned cannot do this, as there is no information on whether Ted Clark would request the tape. *See, e.g., H.L. Hayden of New York, Inc. v. Siemens Medical Systems, Inc.*, 108 F.R.D. 686, 690–91 (S.D.N.Y.1985).

protection of the work-product doctrine at the expense of certain ethical rules, as demonstrated by *Parrott,* 707 F.2d at 1270–72.

Plaintiffs who proceed in this court *pro se* are still expected to obey the rules of this court, although a certain leniency is occasionally shown. *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.1989) ("[O]nce a pro se IFP litigant is in court, he is subject to the relevant law and rules of court"). Were plaintiff to have pursued this case without benefit of counsel, the rules of this court and, derivatively, the ethics rules of the Bar would certainly apply. The *Parrott* doctrine would clearly vitiate the work-product protection of the tape in such a case.

To carve out an odd, small exception to the *Parrott* doctrine simply because a layperson secretly tapes a witness interview and then hires an attorney would give such a litigant an unusual and unfair advantage. This advantage would be offensive to the policies that underlie the work-product protection.

The work-product doctrine, along with the attorney-client privilege, promotes the "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Among these interests is "to encourage the proper functioning of the adversary system." *In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir.1986) (citing *In re Grand Jury Proceedings,* 604 F.2d 798, 802 (3rd Cir.1979)). *See also Westinghouse Electric Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1427–28 (3rd Cir.1991) (discussing policies permitting waiver of work-product privilege). Permitting an advantage because of secret taping would lead to an imbalance of the adversarial process.

It is the preservation of the integrity of the adversarial process which the Eleventh Circuit Court of Appeals sought to preserve in *Parrott,* 707 F.2d at 1271 (citing *Moody v. Internal Revenue Service,* 654 F.2d 795, 800 (D.C.Cir.1981)). Because an attorney who violates ethics rules would be consciously exploiting the privilege for "ends antithetical to that process," *id., Parrott* holds that the privilege is vitiated. The im-

balance which secret taping inflicts on the adversarial system is present no matter who instigates the taping, the attorney or the client. *Parrott* requires that the client's work-product protection must be stripped here as well.

Another concern would add weight to this reasoning. As noted beforehand, where an attorney acquiesces or approves of secret taping by accepting a great number of such tapes from the client, other courts have vitiated the work-product protection. *Haigh,* 676 F.Supp. at 1356–57; *Sea–Roy Corporation,* 172 F.R.D. at 183. Here, the attorney is not blameworthy for the secretly-made tapes but by accepting the tapes and perhaps even contemplating their use, the attorney comes dangerously close to "acquiescence." The Court is not willing to consider this issue, raised *sua sponte,* as a basis for granting this motion to compel. However, the issue looms in the shadows and should, at least, be illuminated and considered by the parties.

Secretly taped interviews with witnesses are considered unethical and do damage to the adversarial system, regardless of whether the attorney or the client operates the tape recorder. As the work-product doctrine protects documents and recordings in an effort to preserve a balanced and fair adversarial process, logic and simple fairness cannot permit the work-product privilege to be used to shield such damage. In an effort to preserve this balance, the Court finds that plaintiff unwittingly vitiated any work-product protection that would have attached to her taped conversation with a witness because she did so clandestinely. Because of this finding, the undersigned hereby GRANTS defendants' motion to compel the production of the secretly taped conversation and ORDERS plaintiff to produce the tape by December 10, 1997. Because the plaintiff's position was an arguably viable consideration of law, no sanctions are warranted.