848 A.2d 880 (2004)
369 N.J. Super. 323
Russell HALBACH, Plaintiff-Appellant,
v.
Christopher BOYMAN and Boyman & Asociates, P.C., Defendants-Respondents.
Christopher Boyman and Boyman & Associates, P.C., Defendants/Third Party Plaintiffs-Respondents,
v.
Mary Thurber, Esq., The Law Offices of Mary Thurber and Thurber Cappell, LLC, Third Party Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 2003.
Decided May 26, 2004.
*881 Robert A. Vort, Hackensack, argued the cause for appellant Russell Halbach (Pearce, Vort & Fleisig, attorneys; Mr. Vort, on the brief).
Scott D. Samansky argued the cause for respondents Christopher Boyman and Boyman & Associates, P.C. (Fishman & Callahan, attorneys; Mr. Samansky, on the brief).
No briefs were filed on behalf of third party plaintiffs or third party defendants.
Before Judges PETRELLA, WEFING and COLLESTER.
The opinion of the court was delivered by WEFING, J.A.D.
Plaintiff Russell Halbach appeals pursuant to leave granted from a trial court order entered on February 13, 2004. After reviewing the record in light of the contentions advanced on appeal, we reverse.
Halbach owned twenty-five percent of the stock of D.P.S. Acquisition Corporation and several related corporations, all of *882 which the parties have collectively referred to as DPS. The remaining seventy-five percent of the stock was owned by Lawrence P. Scalzo and his wife. Scalzo and Halbach each borrowed money from Michael Wilenta for DPS and in connection with that, executed an agreement on July 28, 1989, that conferred equal decision making authority upon Scalzo and Halbach despite the difference in their ownership interest. The agreement included the following language.
In short, although Scalzo has a 75 percent (75%) interest in D.P.S. and Halbach has a 25 percent (25%) interest in D.P.S. it is the intention of all the parties hereto that neither Scalzo nor Halbach shall take any action materially affecting the business of D.P.S. at any time without the consent of the other party.
Differences eventually developed between Halbach and Scalzo which, according to Halbach, culminated in Scalzo attempting to fire him. According to the record before us, the final rupture occurred in July 1997. Scalzo and Halbach then began the process of negotiating an agreement which would sever their business relationship.
During the course of their business relationship, DPS was represented by defendant Christopher Boyman, Esq. Boyman had also represented Scalzo and Halbach individually in several matters over the years. Because of the potential conflict of interest, Boyman did not represent either Halbach or Scalzo in their negotiations. Halbach selected his own attorney, third party defendant Mary Thurber, Esq., to represent him in these negotiations. Thurber represented Halbach in these negotiations no later than August 27, 1997.
Scalzo and Halbach eventually agreed upon the terms under which Scalzo would purchase all of Halbach's interest in DPS. In addition, they agreed that Boyman would draft the redemption agreement setting forth the terms and conditions for Scalzo's purchase of Halbach's stock.
Boyman proceeded to draft the agreement and submitted it to Thurber for her comments. Before Halbach finally executed the agreement, it was revised several times in light of her comments and suggestions. It was finally executed by both Scalzo and Halbach in December 1997.
Although both men signed the agreement, another dispute erupted between the two and the scheduled closing never took place. Halbach asserted that the agreement he had negotiated with Scalzo called not only for payment of a flat price for his stock interest but also included an agreement that he would receive a distributive share of DPS's earnings through the time of the closing. Scalzo denied this, maintaining Halbach was entitled only to be paid for his stock, not to share in the corporation's earnings.
Halbach and Scalzo sued each other. They each moved for summary judgment, Halbach contending that the language of the redemption agreement supported his position that he was entitled to share in earnings, Scalzo contending the agreement supported his position that Halbach had no such entitlement. Both motions were denied. The final version of the redemption agreement upon which both relied is not contained in the record before us.
Eventually, Halbach and Scalzo settled their dispute and Halbach then sued Boyman, which is the matter now before us. He contended that Boyman breached his duty to Halbach in the manner in which he drafted the redemption agreement and placed Salzo's interests over his. After Halbach sued Boyman, Boyman asserted a third party claim against Halbach's own attorney, Thurber.
*883 Not surprisingly, given the history of this matter and the nature of the claims asserted, the discovery process has been marked by disputes, one of which has led to our involvement. Halbach filed a motion to compel production of certain DPS documents and Boyman resisted, asserting attorney-client privilege. That dispute was purportedly resolved by an order entered by the trial court in September 2002. Disputes continued apace, however. Boyman wished to take Thurber's deposition and filed a motion to bar her, during her deposition, from asserting the attorney-client privilege. The trial court granted that motion and entered an order on February 13, 2004, which compelled both Halbach and Thurber to appear for depositions, and to produce Thurber's entire file. The order further provided that insofar as negotiation and execution of the redemption agreement was concerned, the attorney-client privilege had been waived because the communications between the two was a subject of the controversy in this suit. We granted Halbach's motion for leave to appeal and stayed the trial court's order pending this appeal.
The privilege which the law affords communications between a client and his attorney is the oldest privilege known to common law. Upjohn Company v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591 (1981). The root of the attorney-client privilege is the recognition that "sound legal advice or advocacy serves public ends" and requires full and frank communication between a client and his counsel. Dontzin v. Myer, 301 N.J.Super. 501, 506, 694 A.2d 264 (App. Div.1997). It is codified in New Jersey in N.J.R.E. 504 and N.J.S.A. 2A:84A-20(1).
Privilege born of the common law, such as the attorney-client privilege here involved, is not an idle and anachronistic vestige of the ancient past. On the contrary, it has a well-defined relationship, recognized and defined over the centuries, to the administration of justice, to the basic needs of the human condition, to the essential rights of man and thus to the public interest. As such it clearly deserves the continued protection of the courts.
[In re Kozlov, 79 N.J. 232, 242-43, 398 A.2d 882 (1979).]
Courts generally afford a narrow construction to claims of privilege in recognition of the fact that upholding a privilege can result in suppression of the truth. Kinsella v. Kinsella, 150 N.J. 276, 294, 696 A.2d 556 (1997). The attorney-client privilege is thus not absolute and the burden of establishing cause to pierce the privilege rests upon the party who seeks to do so. Nat'l Util. Serv. v. Sunshine Biscuits, 301 N.J.Super. 610, 618-19, 694 A.2d 319 (App. Div.1997).
Before proceeding to pierce the attorney-client privilege, three elements must be established.
There must be a legitimate need of the party to reach the evidence sought to be shielded. There must be a showing of relevance and materiality of that evidence to the issue before the court.... [I]t must also be shown ... that the information could not be secured from any less intrusive source.
[Kozlov, supra, 79 N.J. at 243-44, 398 A.2d 882.]
Defendant points to In re Kozlov, supra, cited by the trial court, and United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 483 A.2d 821 (App.Div.1984), to support the trial court's order. We are satisfied, however, that neither justifies the broad relief granted by the trial court in this matter.
Kozlov involved a New Jersey attorney who had received information from a client *884 that cast doubt on the impartiality of a juror who had participated in a recent criminal trial that had resulted in the conviction of a municipality's police chief. The client had requested, for reasons of his own, that his identity not be revealed. Kozlov, who had had no involvement in that criminal trial, informed the defendant's attorney of what he had learned. He did not reveal the identity of his client, in accordance with the client's request. Defendant's attorney then filed an application with the trial court pursuant to R. 1:16-1. The trial court ultimately held Kozlov in contempt for his refusal to identify the individual who had relayed the information to him. The Supreme Court, after setting forth the three prongs necessary to justify an incursion into communications between an attorney and his client, reversed Kozlov's contempt conviction, noting the variety of other less intrusive avenues available to the trial court to verify the information of alleged juror misconduct.
The question in Wolosoff, supra, arose in the context of post-judgment litigation between the bank and its debtor Wolosoff. United Jersey Bank obtained a judgment of nearly four million dollars against Wolosoff following his default on a mortgage note. Wolosoff's attorney met with the bank's vice-president and in-house counsel to discuss how the judgment could be satisfied. During the course of these discussions, Wolosoff's attorney made certain representations about the extent of Wolosoff's assets, as a result of which the bank agreed to accept the sum of $875,000, payable in four installments, in full satisfaction of its judgment. Approximately two years later, the bank came into information which led it to believe that, contrary to the representations of his attorney, Wolosoff had more than sufficient assets to satisfy the bank's judgment. The bank filed suit to rescind the stipulation of settlement and filed a separate suit against Wolosoff and his attorney. In the course of discovery, defendants sought production of documents from the bank's file, asserting that it needed the material to address the question whether the bank relied upon the earlier representations made by Wolosoff's attorney. The bank, in turn, asserted the attorney-client privilege over certain of the material. The trial court ordered complete production. We granted leave to appeal and reversed. We noted that the nature of the confidential communications which may have occurred between in-house counsel and his employer was a material issue in the case and thus the bank should be deemed to have waived its privilege over those documents that went to the question of reasonable reliance. We stressed, however, the need for a painstaking in-camera review to determine which documents should be disclosed and which should be protected from disclosure. Id. at 563, 483 A.2d 821.
We interpret Wolosoff to indicate that a trial court must proceed with caution and circumspection in this area. Orders declaring a wholesale waiver of the attorney-client privilege should not be entered; rather, there should be a careful delineation of permissible avenues of inquiry, if indeed, there be any.
Based upon comments by counsel at oral argument, however, it appears clear that the trial court's order was premature in any event. There has yet to be a determination of what duty, if any, Boyman owed to Halbach. If Boyman did not owe a duty to Halbach, it may be possible to dispose of the matter by way of summary judgment, without the necessity of deposing Thurber about her conversations with Halbach before he executed the redemption agreement.
*885 In addition, both counsel have put forth differing interpretations of what the redemption agreement itself provided. If, contrary to Halbach's position, the agreement clearly does not provide for Halbach to share in the earnings of DPS, what advice he may have received from Thurber would be entirely immaterial. A motion addressed to that question may thus also permit disposition of this matter without the necessity of deposing Thurber.
Because we are satisfied that defendant failed to establish the three-prong test of Kozlov, at least at the juncture he first presented his motion to the trial court, and because the trial court issued an order that was overbroad in all events, we reverse the trial court's order of February 13, 2004, and remand for further proceedings. We do not retain jurisdiction.