872 A.2d 120

RUSSELL HALBACH, PLAINTIFF–RESPONDENT, v. CHRIS-
TOPHER BOYMAN AND BOYMAN & ASSOCIATES, P.C.,
DEFENDANTS–APPELLANTS.

CHRISTOPHER BOYMAN AND BOYMAN & ASSOCIATES, P.C., DE-
FENDANTS–APPELLANTS/THIRD–PARTY  PLAINTIFFS,  v.
MARY THURBER, ESQ., THE LAW OFFICES OF MARY THUR-
BER AND THURBER CAPPELL, LLC, THIRD–PARTY DEFEN-
DANTS.

Superior Court of New Jersey
Appellate Division

Argued March 9, 2005—Decided May 3, 2005.

Before Judges WEFING, PAYNE and C.S. FISHER.

*Scott D. Samansky* argued the cause for appellants (*Fishman & Callahan,* attorneys; *Mr. Samansky,* on the brief).

*Robert A. Vort* argued the cause for respondent.

The opinion of the court was delivered by

WEFING, P.J.A.D.

We granted defendants Christopher Boyman and Boyman & Associates, P.C. ("Boyman") leave to appeal from a trial court order directing Boyman to answer certain questions posed in his deposition and rejecting his contention that the questions improperly sought material protected under the work product doctrine enunciated in *R.* 4:10–2(c). Having reviewed the record in light of the contentions advanced on appeal, we reverse.

This is the second time we have been called upon to rule on discovery disputes in this matter. In *Halbach v. Boyman,* 369 *N.J.Super.* 323, 848 *A.*2d 880 (App.Div.2004), we reversed a trial court order directing the deposition of plaintiff's attorney and the production of her entire file.

It is necessary to set forth again some of the factual background of this matter to understand the context in which this second appeal has arisen. This litigation had its genesis in a dispute between shareholders of a close corporation. Plaintiff Halbach owned twenty-five percent of the stock of several corporations referred to collectively as DPS, or the Dependable Companies, while the remaining shares were owned by Lawrence P. Scalzo and his wife. *Id.* at 326, 848 *A.2d* 880. DPS needed funds, and Scalzo and Halbach borrowed the money for DPS from Michael Wilenta. *Ibid.* In conjunction with that loan, Scalzo and Halbach executed an agreement that conferred equal decision-making authority upon both of them. *Ibid.* Differences developed between them, however, and Scalzo, despite that agreement, eventually attempted to fire Halbach. *Ibid.*

Later, the two men tried to resolve their differences through negotiation. *Ibid.* Boyman had served as the attorney for DPS, and he had also represented both Halbach and Scalzo on certain personal matters, and he, thus, did not represent either man in the negotiation process. *Ibid.* Halbach did hire an attorney, Mary Thurber, Esq., to represent him in this process. *Id.* at 326, 848 *A.2d* 880. It was the production of her file and her deposition that were at issue in our earlier opinion.

Eventually, Halbach and Scalzo came to an agreement under which Scalzo would purchase all of Halbach's shares in DPS. *Id.* at 327, 848 *A.2d* 880. They also agreed that Boyman would act as scrivener and reduce their agreed-upon terms to writing. *Ibid.* In his capacity as scrivener, Boyman drafted an agreement that he submitted to Halbach's attorney, Thurber, for her review and approval. *Ibid.* The agreement, which went through several revisions in light of Thurber's comments and suggestions, was finalized and executed in December 1997. *Ibid.*

Halbach, however, refused to close the transaction, claiming the document he had executed did not, in fact, reflect the terms upon which he and Scalzo had agreed. *Ibid.* He contended that he was entitled to receive not only the purchase price for his stock but

also his distributive share of the earnings of DPS through the time of closing. *Ibid.* Scalzo insisted Halbach was only to receive the price of his shares of stock. *Id.* at 327, 848 *A.2d* 880.

This dispute resulted in a Chancery Division suit, *Scalzo v. Halbach,* in which Scalzo sought to enforce the December 1997 document. Halbach, in addition to defending this suit, filed an action in the Law Division in April 1998, in which he named as defendants not only Scalzo but also Boyman and his firm. Included among Halbach's claims was the assertion that Boyman committed malpractice in his drafting of the redemption agreement. Boyman, in turn, filed a third-party action against Thurber.

Halbach filed a motion to consolidate the Chancery and Law Division actions. Although it is not entirely clear from the material submitted to us in connection with this appeal, we infer that the motion to consolidate was granted.

DPS was a party to the litigation, but was represented in the lawsuit by Michael Kasanoff, Esq., not Boyman. Boyman, who was also a party, initially represented himself. Acting pro se, he submitted a letter to the chancery judge dated July 1, 1998, in which he opposed Halbach's motion to consolidate.

Later, while the chancery litigation was proceeding, Halbach filed another motion seeking the appointment of a receiver for DPS. In December 1999, again while still representing himself, Boyman wrote another letter to the court in which he expressed concern that Mr. Kasanoff's request for an adjournment of that motion had not been granted, and he set forth several reasons why, in his view, such an appointment should not be made.

We are informed that at some point the chancery judge stayed the claims against Boyman and Thurber while the litigation over the redemption agreement proceeded. When Halbach and Scalzo ultimately came to terms on that dispute, the chancery judge dismissed the remaining claims, which were then reinstituted in the Law Division. It is that litigation in which Halbach asserts claims against Boyman who, in turn, asserts claims against Thur-

ber, which is at issue here. Boyman is no longer proceeding pro se but is represented by counsel.

In connection with this litigation, Halbach's attorney deposed Boyman and sought to inquire about Boyman's reasons for writing the letters of July 1998 and December 1999. Boyman declined to answer the questions. The following colloquies occurred during this deposition:

Q. But insofar as you as a personal litigant were concerned, was there any practical—was there any additional impact to the issue?

A. I am not sure what you mean.

Q. Was there any practical harm to you if the court ruled against you?

A. That answer is probably privileged as work product or as litigation strategy.

* * * *

Q. What is Boyman–30?

A. Boyman–30 is a letter dated December 15, 1999 from me to Judge Simon.

Q. Why were you writing—why did you write this letter?

A. This letter is written in response to Ms. Thurber's motion for the appointment of a receiver and other relief and objects to the timing of the hearing of the motion and the responses to it.

Q. And she filed a motion, Mr. Kassanoff (sic) asked for an extension of time and the court had denied it; correct?

A. I believe I had also asked—yeah, that's correct, that's correct.

Q. Well, why did it matter to you as a litigant when the application did not deal with Christopher Boyman in his capacity as a defendant?

A. Again, I believe that's a privileged—I believe the response to that is privileged. You are asking me why I would decide to oppose it, I think you are asking me for my thoughts about the litigation. I mean you're asking me what my strategy was in deciding to object to it. I am not sure what else you're asking.

Q. I don't know if I would use the word strategy, but you're in the ballpark....

Halbach moved for relief, and the trial court, relying on the unpublished opinion of a United States District Court, *Sec. and Exch. Comm'n v. Nat'l Student Mktg. Corp.*, 18 *Fed.R.Serv.*2d 1302 (D.D.C.1974), granted Halbach's motion.

The United States Supreme Court first recognized the doctrine of work product privilege in *Hickman v. Taylor*, 329 *U.S.* 495, 67 *S.Ct.* 385, 91 *L.Ed.* 451 (1947). The Court noted that the privilege

serves to permit lawyers to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman, supra,* 329 *U.S.* at 510, 67 *S.Ct.* at 393, 91 *L.Ed.* at 462.

In New Jersey, the work-product doctrine is recognized in *R.* 4:10–2(c), which provides:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under R. 4:10–2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

[*R.* 4:10–2(c).]

We are satisfied that *National Student Marketing,* the authority cited by the trial court, is distinguishable and does not warrant the relief granted here. The court in that matter was dealing with some of the sequelae of the National Student Marketing Corp. fraud. *See Sec. and Exch. Comm'n v. Nat'l Student Mktg. Corp.,* 360 *F.Supp.* 284 (D.D.C.1973). The firm of White & Case had represented National Student Marketing. 360 *F.Supp.* at 288. The Securities and Exchange Commission sought production of certain documents the firm had prepared on behalf of National Student during the period the Commission was conducting its investigation. *S.E.C. v. Nat'l Student Mktg., supra,* 18 *Fed. R.Serv.*2d at 1303. The firm resisted producing the documents, asserting the work product privilege. *Id.* at 1304.

The court gave several reasons for rejecting this position. *Id.* at 1305–06. First, it noted that the firm was itself a defendant and charged with participating in and assisting the fraudulent activities of its client. *Id.* at 1305. This, the court stated, "clearly sets them apart and highlights this case as one in marked contrast with the typical situation where shelter is sought under 'work-product' doctrine." *Ibid.*

The court also noted that the client, National Student Marketing, had already voluntarily consented to a permanent injunction under which it had agreed "to make available for discovery, to any party, all material related" to the litigation and had "divested itself of any interest it might have in immunizing attorney 'work-product' from discovery." *Id.* at 1305–06.

Here, by contrast, the dispute does not revolve around the production of documents, and, thus, the court was not confronted with the question whether certain documents might be discoverable. Halbach already has the documents; he rather seeks to question Boyman about why he prepared the documents and what purpose he sought to achieve in sending them. Through these questions, as Halbach's attorney clearly acknowledged in the colloquy we quoted earlier, Halbach sought to question Boyman about his legal theories and strategies.

*R.* 4:10–2(c) provides that even when the work product privilege may be pierced and documents ordered to be produced (which requires a showing both of substantial need and the prevention of undue hardship), "the mental impressions, conclusions, opinions, or legal theories" of the attorney shall be protected against disclosure. Such material "is discoverable only in the rarest situations." Sherman L. Cohn, *The Work–Product Doctrine: Protection, Not Privilege*, 71 *Geo. L.J.* 917, 924 (1983).

Boyman was acting no less as an attorney when he invoked the work product privilege simply because he was proceeding pro se. The legal theories he formulated on his own behalf are deserving of the same measure of protection as would be afforded those he formulated on behalf of another client. Even a non-lawyer "who creates work-product material before hiring an attorney" is entitled to invoke the work product privilege. *Otto v. Box U.S.A. Group, Inc.*, 177 *F.R.D.* 698, 699 (N.D.Ga.1997) (recognizing the privilege but ordering production nonetheless of tapes of secretly-recorded conversations). Further, a law firm may invoke the privilege on its behalf in connection with documents generated after learning of a potential claim against it. *Nesse v. Pittman,*

202 *F.R.D.* 344 (D.D.C.2001). In addition, we were informed at oral argument that at the time Boyman wrote these letters, he was acting as attorney for DPS in matters that were unrelated to this litigation.

We are satisfied that unless and until Boyman asserts a defense to Halbach's claims that involves his purpose in writing these two letters, Boyman is entitled to the protections afforded by *R.* 4:10–2(c). The order under review is reversed, and the matter is remanded for further proceedings.

Reversed and remanded.