**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1562-21

GLOBAL LOGISTIC &
DISTRIBUTION, LLC,

     Plaintiff-Respondent,

v.

14 BURMA ROAD ASSOCIATES,
HENRY CHIU, and 100
MIDDLESEX AVENUE, LLC,

     Defendants-Appellants.

_____

Submitted September 20, 2022 – Decided October 13, 2022

Before Judges Messano and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000218-19.

Lowenstein Sandler, LLP, and Winnie Mok, attorneys for appellants (Wojciech F. Jung, Reynold Lambert, Craig Dashiell, and Winnie Mok, on the briefs).

Steinbach & Associates, PC, and Cole Schotz, PC, attorneys for respondent (Sean Lipsky and Joseph

Barbiere, of counsel and on the brief; Arnold P. Picinich, on the brief).

PER CURIAM

We granted defendants 14 Burma Road Associates (Burma), Henry Chiu, and 100 Middlesex Avenue, LLC (Middlesex), leave to appeal from the trial court's January 18, 2022 order directing they produce certain materials pursuant to discovery demands by plaintiff Global Logistic and Distribution, LLC (Global). Defendants asserted the documents were privileged under either the attorney-client privilege, the work-product privilege, or both. We place the dispute in its proper context.

## I.

Global's amended verified complaint alleged the following. Global entered into a lease with Burma to rent 108,000 square feet of warehouse space in a building in Carteret that Burma intended to purchase. Burma is a general partnership, with Henry Chiu[1] and Middlesex as the partners. The lease included an "irrevocable and exclusive option" for Global to purchase the property from Burma. Burma consummated the purchase of the property using $400,000

---

[1] To avoid confusion between defendant and his son Alexander Chiu, we sometimes use their first names and intend no disrespect by this informality.

Global deposited when it executed the lease. By its terms, the lease permitted Global to apply the $400,000 deposit to the option purchase price if it exercised its option. Global invoked its right to purchase in a timely fashion, and Burma refused to close title in accordance with the option.

Global alleged Burma breached the contract and sought specific performance, monetary damages, and a declaratory judgment that defendants had committed an anticipatory breach of the lease. Defendants filed a joint answer and discovery ensued.

Both before and after plaintiff filed its complaint, Henry sent emails to his son Alexander, who is not an attorney, regarding the lease, the purchase option, the potential transaction with Global, and problems that arose between the parties after Global tried to exercise its option. After the complaint was filed, Henry sometimes attached draft pleadings or settlement proposals sent by his counsel; Alexander sometimes responded with suggestions.

Global deposed Alexander. He testified that Burma was a client of his company, Noir Group, LLC, which provided "periodic services" to Burma for "customer support, technical support, anything that ha[d] to do with software or hardware." Alexander estimated spending more than twenty hours providing services to Burma in the previous year, and his company received professional

3

fees and a retainer for this work. Alexander testified his work for Burma also involved "going through different systems they have for communication" and determining "whether or not [the] company [was] efficient in their communications," and if not, providing "equipment." He was also involved in the purchase and installation of software for Burma.

Alexander disclaimed any knowledge of Burma's business, and said he was neither an employee nor officer and had no ownership interest in the company. Alexander had "no idea" if Henry was involved in litigation, and he repeatedly said he could not recall whether he spoke with Henry about the litigation. Alexander admitted Henry sent him a copy of the lease in September 2019, and that he edited it for Henry in his role as a consultant to Burma. Alexander acknowledged being copied on emails regarding a refinance of the property but did not know why, and he could not recall if he and Henry discussed Global's plan to exercise the purchase option, or if Henry told him of any plan not to sell the property to Global. Alexander claimed he was unaware that Burma did not sell the property to Global.

Defendants refused to turn over certain emails between Henry and Alexander, including any attachments, in response to Global's discovery demands. Defendants filed a privilege log with the court identifying 113 entries

4

they claimed were protected by the attorney-client privilege, the work-product privilege, or both. Global moved for the court to conduct an in-camera inspection of the documents, and the Chancery judge appointed a special master to review them.

The special master's November 12, 2021 decision discussed the legal underpinnings of both privileges. Without identifying the specific privilege that informed the analysis as to each document, the special master concluded 79 of the 113 documents either were not privileged, or Henry disclosed the document to Alexander "breaking [the] privilege." Defendants filed objections to the special master's ruling, and the trial court heard argument.

In a written decision that followed, the judge dismissed defendants' claims that communications between Henry and Alexander were subject to the attorney-client privilege, agreeing with the special master that Henry's disclosure of allegedly privileged information to Alexander "waive[d] [Henry's] privilege." The judge also agreed with the special master that the documents were not shielded from discovery by the work-product privilege. Noting Alexander's deposition testimony, in which he broadly denied any involvement in and knowledge of Burma's business, the judge reasoned Alexander's lack of knowledge, including knowledge of the litigation, meant the disputed documents

"were [not] created with the dominant purpose of preparing for litigation." The judge concluded the special master correctly decided the work-product doctrine was inapplicable to the communications at issue.

Nevertheless, the judge proceeded to consider whether the privilege had been waived. He rejected defendants' argument that because of their close familial relationship, Henry's disclosure to Alexander did not waive the privilege. The judge noted defendants offered "no statutory or case law to support their contention." The judge entered an order requiring defendants to turn over the 79 documents with attachments that the special master determined were not privileged. We granted defendants leave to appeal.

## II.

Before us, defendants abandon their argument that any of the documents are subject to the attorney-client privilege, claiming only that the work-product privilege protects the documents from release to plaintiff.[2] Defendants assert the documents are "classic, opinion work product," and Henry did not waive the privilege by forwarding them to Alexander, who, they contend, was a "consultant to the family business."

---

[2] Our references to "the privilege" throughout the balance of the opinion are to solely the work-product privilege.

A-1562-21

Global contends Alexander's admissions of non-involvement in Burma's business affairs means none of the documents are subject to the privilege. It also contends that defendants are attempting to expand the privilege to every communication from counsel, and, in doing so, are "undermining common principles of waiver of the attorney-client privilege." Global also argues there is no "father-son" exception to the principles governing waiver of the privilege. Lastly, Global contends all the "pre-litigation documents" are not subject to the privilege because at that time, "litigation was not objectively reasonable."

Having considered the arguments in light of the record and applicable legal principles and having conducted our own in camera review of the disputed documents, we reverse and remand for further proceedings consistent with this opinion.

## A.

"Generally, we accord substantial deference to a trial court's disposition of a discovery dispute." Brugaletta v. Garcia, 234 N.J. 225, 240 (2018) (citing Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79–80 (2017)). "[A]ppellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Cap. Health Sys., 230 N.J. at

A-1562-21

79–80 (citing <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 371 (2011)).

We "start from the premise that discovery rules 'are to be construed liberally in favor of broad pretrial discovery.'" <u>Id.</u> at 80 (quoting <u>Payton v. N.J. Tpk. Auth.</u>, 148 N.J. 524, 535 (1997)). <u>Rule</u> 4:10-2(a) reflects this principle:

> Parties may obtain discovery regarding any matter, <u>not privileged</u>, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence . . . .
>
> [(Emphasis added).]

New Jersey's work-product privilege is codified in <u>Rule</u> 4:10-2(c), which provides:

> Subject to the provisions of <u>Rule</u> 4:10-2(d), a party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under <u>Rule</u> 4:10-2(a) <u>and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative</u> (including an attorney, consultant, surety, indemnitor, insurer or agent) <u>only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions,</u>

> conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
>
> [(Emphasis added).]³

The work-product privilege is "not limited to documents prepared by an attorney." Medford v. Duggan, 323 N.J. Super. 127, 133 (App. Div. 1999); see also Halbach v. Boyman, 377 N.J. Super. 202, 208 (App. Div. 2005) ("Even a non-lawyer 'who creates work-product material before hiring an attorney' is entitled to invoke the work product privilege." (quoting Otto v. Box U.S.A. Grp., 177 F.R.D. 698, 699 (N.D. Ga. 1997))).

As the Court has instructed,

> Analysis of the applicability of the work-product doctrine is similar to that of the attorney-client privilege. In order for the doctrine to apply, the materials must have been prepared in anticipation of litigation and not in the ordinary course of business, and there must not be a "substantial need" for the materials. Moreover, the doctrine's protection must not have been waived.
>
> [Payton, 148 N.J. at 554 (quoting R. 4:10-2(c)) (citations omitted).]

---

³ Rule 4:10-2(d) deals with "facts known and opinions held by experts . . . acquired or developed in anticipation of litigation." It has no relevance to this appeal.

Trial courts must apply a fact-specific analysis to determine whether the privilege applies as to each document. Paladino v. Auletto Enters., Inc., 459 N.J. Super. 365, 377 (App. Div. 2019).

B.

The disputed documents essentially fall into two broad categories: emails between Henry and Alexander without any attachments; and emails between them with attached documents from counsel. As best we can discern, the judge seemingly concluded the emails without attachments were not privileged because Alexander's deposition testimony established he was uninvolved with Burma's affairs, and it did "not follow that documents exchanged between Alexander and Mr. Chiu were created with the dominant purpose of preparing for litigation." We disagree.

When considering if the privilege attaches, "the court must make a threshold determination of whether the items sought were, in fact, prepared in anticipation of litigation or for trial." Medford, 323 N.J. Super. at 133. "[A] document will be deemed to have been prepared in anticipation of litigation when the dominant purpose" of preparing it was an "objectively reasonable" concern for potential litigation. Rivard v. Am. Home Prods., Inc., 391 N.J. Super. 129, 155 (App. Div. 2007); see also Miller v. J.B. Hunt Transp., Inc., 339

10

N.J. Super. 144, 150 (App. Div. 2001). "[A] document may be found to have been prepared in anticipation of litigation even though litigation had not been commenced or even threatened when the document was prepared." Miller, 339 N.J. Super. at 149. We reject, therefore, Global's blanket assertion that the pre-litigation exchanges cannot be work-product.

Our review of the allegedly privileged materials suggests that both Henry and Alexander anticipated this litigation and communicated about it extensively before and after the complaint was filed. Their discussions plainly involved strategy to resolve or otherwise defend against this action. For example, they discussed Henry's pre-litigation negotiations with Global's representative. Alexander provided his father with internet links defining legal terms to support an argument that the lease was unenforceable. Henry and Alexander anticipated litigation, and their communications were made for the dominant purpose of concern over potential litigation. Rivard, 391 N.J. Super. at 155.

Rule 4:10-2(c) also requires the putative privileged communication to be made "by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent)." Based on Alexander's deposition testimony, the judge correctly determined he was not a true representative of Burma. Nevertheless, subsection (c)'s "by or for"

11

language is quite broad, ostensibly providing protection for materials sent by a disinterested party to a party or its representative. Here, regardless of whether Alexander was a "representative" of Burma, the communications at issue were made either: (1) "by" Henry, a party and undisputed representative of Burma; or (2) "for" Henry, such as the numerous messages with advice and strategy discussions that Alexander prepared for Henry's benefit. We conclude, therefore, that the emails between Henry and Alexander, without attachments of documents from counsel, were ostensibly protected by the work-product privilege.

The second category of materials were email exchanges that included as attachments documents prepared by or sent by defendants' counsel to Henry. Before the trial court, defendants asserted both the attorney-client and work-product privileges applied. The special master concluded these documents included "legal advice to Henry . . . from [counsel] disclosed to Alexander . . . breaking [the] privilege." It is unclear if the special master considered application of the work-product privilege. The judge upheld the special master's decision, and, without further discussion as to whether the work-product privilege applied in the first instance, the judge rejected defendants' assertion

that they did not waive the privilege by Henry's disclosure to a close family member, his son Alexander.

For reasons already discussed, we conclude this set of email exchanges were subject to the privilege. They were generated after the litigation commenced, included attached documents that were part of or intimately related to the pleadings, and the exchanges included commentary between Henry and Alexander about the documents. We focus then on the judge's terse analysis of the waiver issue.

The Court has recognized the need for lawyers to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." O'Boyle v. Borough of Longport, 218 N.J. 168, 189 (2014) (quoting Hickman v. Taylor, 329 U.S. 495, 510 (1947)). Disclosure by the attorney of his or her work-product to a third party waives the protection unless such disclosure is confidential. Id. at 189–90 (citing N.J.S.A. 2A:84A-29; N.J.R.E. 530). However, if the material is disclosed in a way that is inconsistent with keeping it from an adversary, the work-product doctrine is waived. Id. at 192. Thus, as to waiver of the work-product privilege, the O'Boyle Court credited the "prevailing view" and wrote "the inquiry considers whether the disclosed material reached an adversary or whether the disclosure . . . made it substantially

13

likely that the protected material would reach an adversary." Ibid. (citing In re Chevron Corp., 633 F.3d 153, 165 (3d Cir. 2011)).

Here, the judge did not discuss this standard when he seemingly concluded defendants waived any claim that the privilege applied because Henry shared the material with Alexander. Instead, the judge simply rejected defendants' assertion that Henry's disclosure to a close family member waived the privilege. Nor did the judge differentiate between the content of Henry's and Alexander's email exchanges, which for the reasons already expressed, are prima facie subject to the privilege, and the attachments themselves, which were generally from defendants' counsel and only disclosed to Alexander via Henry's emails.

As defendants note, there is some support for the proposition that disclosure of otherwise privileged information to family members does not automatically affect a waiver of the privilege. They cite, for example, Schanfield v. Sojitz Corporation of America, where the court found the sharing of privileged materials with the party's "two sisters and another close relative" did not effectuate a waiver. 258 F.R.D. 211, 216–17 (S.D.N.Y. 2009). They also cite United States v. Stewart, where the court found that the defendant did not waive the privilege by forwarding an email from counsel to her daughter. 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003). We need not address the issue

14

because the trial judge did not properly consider the waiver standard as explained in O'Boyle. Because we are remanding for other reasons explained below, the judge shall also consider whether Henry's disclosure to Alexander of the attached email documents "made it substantially likely that the protected material would reach an adversary," O'Boyle, 218 N.J. at 192, thereby waiving the privilege.

C.

Having concluded that the materials at issue here were prepared in anticipation of litigation, by or for a party or a party's representative, we return to Rule 4:10-2(c), which contemplates disclosure nevertheless may be compelled upon a "showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Because the judge adopted the special master's findings and concluded the documents were not privileged, he never addressed this issue. He shall do so on remand.

Furthermore, if following remand the court orders production of any of the disputed materials, it shall order redaction of the "mental impressions, conclusions, opinions, or legal theories" of Henry or defendants' counsel as

15

required by Rule 4:10-2(c).  See Jenkins v. Rainner, 69 N.J. 50, 55 (1976) (mental impressions, legal theories or opinions of attorneys or other party representatives are immune from production); Halbach, 377 N.J. Super. at 207 ("[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" (quoting R. 4:10-2(c))).

In sum, we remand for the court to consider whether defendants waived the privilege with respect to the attachments contained in the post-litigation email exchanges between Henry and Alexander by applying the O'Boyle standard.  The court shall also determine pursuant to Rule 4:10-2(c), whether Global's need for the pre- or post-litigation emails and attachments, and any hardship associated with obtaining them otherwise, militates against their privileged status.  Any documents ultimately ordered to be produced shall be redacted to omit the "mental impressions, conclusions, opinions, or legal theories" of Henry or counsel.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16